J. Preston Leavitt et al., in Equity
*vs.*
Albert O. Davis et al.

Cumberland.   Opinion, November 26, 1957.

*Albert E. Anderson and Herbert A. Crommett,*
for plaintiff.

*Welch & Welch,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, SULLIVAN, DUBORD, JJ. TAPLEY, J., did not sit.

WILLIAMSON, C. J.    This is an appeal by the defendants from a decree in equity. The plaintiffs are the owners of a portion of lot numbered 90 at Higgins Beach in front of which lies shore lot numbered 190 owned by the defendants. Lot 190 was used by the defendants for a public parking lot for profit. The decree perpetually enjoined the defendants "from permitting the parking of automobiles, buses or other vehicles" on their lot, thus destroying the parking lot business.

The case arises from the alleged breach by the defendants of a covenant purporting to restrict the use of the land now known as lot 190. The covenant appears in the deed conveying lot 90 given in 1898 by the then owners of both lot 90 and lot 190. It reads:

> ". . . and the said grantors hereby covenant and agree with the said grantee that upon the parcel of land lying in front of said lot Ninety included between Bay View Avenue, and the sea, and the side lines of said lot Ninety produced to the sea, they will erect or maintain no building or structure of such a character as to interrupt or interfere with the view over said parcel from said lot Ninety."

The defendants contend the plaintiffs failed to establish the ownership of both lots in the 1898 grantors, or, in other words, a common ownership at that date of lots 90 and 190. We are satisfied, however, as was the sitting justice, that such was the fact within the agreement of the litigants. In any event, our decision does not turn upon this issue of fact.

The sitting justice, in reaching his conclusion, said in part:

"The plaintiffs contend that the parking of these vehicles cause an obstruction of view and violates the above cited easement. They also object to the building of the retaining wall which they say interferes with their right of view."

\* \* \* \* \* \* \* \*

"The grantors by this covenant of view burdened the servitude lot 190 for the benefit of the dominant lot 90, thereby creating a covenant running with the land which continues to be of benefit to the land of these plaintiffs.

"The easement created prohibits the maintenance of any structure which is of such a character as to interrupt or interfere with the view from lot 90.

"There appears to be no question that the parking of automobiles, trucks and busses on lot 190 does interrupt and interfere with the view from lot 90."

The decree did not touch the retaining wall and so we dismiss any objection thereto from consideration.

The decisive issue, in our view of the case, is this:

Is an automobile, bus, or other vehicle parked on lot 190 thereby interrupting or interfering with the view from lot 90, a "building or structure" within the meaning of the restrictive covenant? We think not. The vehicles are not buildings, nor do they have the characteristic permanency which we associate with structures.

It is urged in argument that the controlling words of the covenant are not "building or structure" but "to interrupt or interfere with the view." In brief, the plaintiffs' position is that any use of lot 190 which interrupts or interferes with the view violates the covenant.

A restrictive covenant ought not to be extended by construction beyond the fair meaning of the words. We must not attempt to rewrite the agreement of 1898 in the light

of what would be desirable in 1957. The prohibition of "any use" obstructing the view places no limit whatsoever on the types of use prohibited. For example, trees obstructing the view would fall within "any use." If such was the intention of the parties to the 1898 deed, the covenant could readily have guarded against obstruction of the view from *any use,* and not in terms against only *buildings or structures.*

There is no suggestion that the words "building or structure" were not in 1898, as today, words of plain meaning and in ordinary usage. The plaintiffs would utterly destroy their force and effect in the covenant.

A structure is "something constructed or built, as a building, a dam, a bridge; esp., a building of some size; an edifice." Webster's New International Dictionary (2d ed.) Unabridged. In 40 Words and Phrases 323 *et seq.* and 1957 Cumulative Pocket Parts may be found other cases which serve to illustrate the point that motor vehicles are not structures.

> "Deed restricting erection of 'structure' in front of property means something which will interfere with use of street or obstruct view." (Boardwalk) *Hulett* v. *Borough of Sea Girt,* 106 N. J. Eq. 118, 150 A. 202, 205.

> "The word 'structure' as used in a zoning ordinance has been held to mean any construction, or any production or piece of work artificially built up or composed of parts joined together in some definite manner." (Zoning) *Paye* v. *City of Grosse Pointe,* 279 Mich. 254, 271 N. W. 826, 827.

> "In common usage, the word 'structure' describes something constructed or built, and, in an accepted sense, a trailer house is a structure." (Zoning) *City of Sioux Falls* v. *Cleveland,* 75 S. D. 548, 70 N. W. (2nd) 62, 64.

> "Word 'structure' means anything which is constructed or erected and use of which requires more

or less permanent location on ground or attachment to something having permanent location on ground." (Workmen's Compensation) *Holsey Appliance Co.* v. *Burrow* (Okl.), 281 P. 2d 426, 427.

"The word 'structure' encompasses walls, wells, septic tanks, water tanks, towers, and every other product of construction designed for permanent use where it stands, not included within meaning of the word 'building.' " (Zoning) *A. Dicillo & Sons* v. *Chester Zoning Bd. of Appeals,* Ohio Com. Pl., 103 N. E. (2nd) 44, 47.

The Connecticut Court, in holding that a billboard, while it was a structure, was not a building within a restrictive covenant, stated the principle in these words:

"In the determination of the meaning in which words in a restrictive covenant are used, the controlling factor, when discovered, is the expressed intent. Intent unexpressed will be unavailing. In the discovery of the expressed intent, there are certain accepted principles of construction to be observed. One is that the words used are to be taken in their ordinary and popular sense, unless they have acquired a peculiar or special meaning in the particular relation in which they appear, or in respect to the particular subject matter, or unless it appears from the context that the parties intended to use them in a different sense. Another is that, if the language of a restrictive covenant, when read in the light which the context and surrounding circumstances throw upon it, remains of doubtful meaning, it will be construed against, rather than in favor of, the covenant. Restrictive covenants, being in derogation of the common-law right to use land for all lawful purposes that go with title and possession, are not to be extended by implication. (citations omitted) There is nothing in the record to indicate that the parties to the covenant intended that the word 'building', as used, was not to be taken in its ordinary and popular sense. There is no basis for concluding that, under the rule to be applied in discovering the ex-

pressed intent, the word had any other meaning." *Katsoff* v. *Lucertini*, 141 Conn. 74, 103 A. (2nd) 812, 814.

In light of the construction we place upon the covenant, that is to say, that the parked vehicles are not structures and so parking is not prohibited, it becomes unnecessary to consider the binding quality of the covenant upon lot 190. If a building or structure interfering with the view were involved, the effectiveness of the covenant would be a matter for decision.

It is sufficient for our purposes that we look upon the covenant in the view most favorable to the plaintiffs in every respect, except on the point immediately in issue. We are then unable to escape the conclusion that the prohibition of the covenant covers only buildings and structures of a certain character, and that parked motor vehicles do not fall within the class prohibited.

In this opinion we neither express nor intimate any views upon the covenant, except upon the issue, and that alone, stated earlier in the opinion.

The entry will be

> *Appeal sustained with costs to be taxed below. Case remanded for entry of a decree of dismissal in accordance with this opinion.*

BELIVEAU, J. (dissenting)

I am unable to agree with the majority in their interpretation of the covenant quoted in the opinion. I dissent and feel I should give my reasons for doing so.

The rule of construction of a covenant, such as this, is well recognized by the courts. It was ably stated by Chief Justice Rugg in *Allen et al.* v. *Massachusetts Bonding & Insurance Company*, 143 N. E. 499, 33 A. L. R. 669.

"The inquiry in this respect is to ascertain the intention of the parties in executing and accepting the deeds. That intention is to be found in the words used, interpreted in the light of all the material circumstances and the pertinent facts known to the parties. A servitude over one parcel of land for the benefit of another can be established only when it appears to have been the intention of the grantor, by inserting in his deed words of restriction, to create a right inuring to the benefit of another parcel of land and to be annexed to it as an appurtenance. Bessey v. Ollman, 242 Mass. 89, 91, 136 N. E. 176, and cases there cited."

The rules of construction

". . . . . should not be applied in such a way as to defeat the plain and obvious purposes of a contractual instrument or restriction."

*Brown, et al.* v. *Hojnacki et al.* (Ct.), 259 N. W. 152, 97 A. L. R. 621.

"If we were to consider only the precise language of the covenant, we might agree with the contention of the defendant, but, under the circumstances of this case, the rights of the parties are not to be determined by a literal interpretation of the restriction. It is to be construed in connection with the surrounding circumstances, which the parties are supposed to have had in mind at the time they made it, the location and character of the entire tract of land, the purpose of the restriction — whether it was for the sole benefit of the grantor or for the benefit of the grantee and subsequent purchasers, . . . . . ."

*Library Neighborhood Association* v. *Goosen,* 229 Mich. 89, 201 N. W. 219-220.

The majority opinion states that "a restrictive covenant ought not to be extended by construction beyond the fair meaning of the words." In this view the majority opinion not only narrows and limits the interpretation of the cove-

nant to "a fair meaning of the words" but ignores the general rule enunciated by Chief Justice Rugg, *supra,* that the words used must ". . . . be interpreted in the light of all material circumstances and the pertinent facts known to the parties." This covenant is nothing more than a contract and the usual rules of construction are to be followed, if the covenant is ". . . . . . reasonable, not contrary to public policy, not in restraint of trade, and not for the purpose of creating a monopoly." 14 A. J. Sec. 206, page 616. It is not argued, contended or claimed that the covenant under consideration violates this rule.

I have no quarrel with the majority ruling that motor vehicles do not come within the definition of "building or structure." I readily admit that motor vehicles are not within that category.

What was the intention of the grantors in inserting the restriction in their deed and the intention of the grantee when he accepted the deed? It follows, of course, that the execution of a deed is the culmination of negotiations between the parties and expresses their understanding.

In 1898 Walter S. and Edward S. Higgins were the owners of a large tract of land of which Lots 90 and 190 were a part. It being shore property it was their purpose to so dispose of this property as to make it attractive to would-be purchasers, and it requires no stretch of the imagination, to conclude that one of the inducements offered would be that purchasers of Lot 90 would have an unobstructed view from Lot 90 over Lot 190, and this is what the grantee expected when he accepted the deed.

While such a restriction might not be too important as to inland property, such is far from the case where seashore property is involved. One of its most valuable assets is a complete view of the ocean.

The covenant did not prohibit the erection of any building or structure, but only those of such a character as to interrupt or interfere with the view. Is it to be maintained that the owners of Lot 190 were at liberty, at all times, to erect and maintain on that lot any other object on its surface which could interrupt or interfere with the view? Did the parties have in mind interruption or interference by anything but buildings or structures? If so, then the view could be not only obstructed and interfered with but completely destroyed. If they had in mind the view, as I believe they did, then no object of any kind could be constructed or maintained on Lot 190, ". . . . of such a character as to interrupt or interfere with the view."

The view was one of the important incidents of the transaction. It is not reasonable to conclude that the parties intended to limit obstruction and interference to the view, to "building or structure" alone. This interference would, for all practical purposes, completely destroy the purpose of the covenant. Obstruction and interference, of any kind, other than "building or structure" would, in fact, destroy what the parties intended to accomplish.

I would deny the appeal and sustain the decree below.