1998 ME 106

## SYLVAN PROPERTIES CO.

v.

## STATE PLANNING OFFICE, et al.[1]

Supreme Judicial Court of Maine.

Argued March 3, 1998.

Decided May 13, 1998.

Bruce C. Mallonee (orally), Edmond J. Bearor, Rudman & Winchell, L.L.C., Bangor, for plaintiff.

Andrew Ketterer, Attorney General, Lucinda E. White, Asst. Atty. Gen. (orally), Augusta, for appellees.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, DANA and SAUFLEY, JJ.

CLIFFORD, Justice.

[¶ 1] The State Planning Office and Evan Richert appeal from a declaratory judgment in the Superior Court (Penobscot County) determining that the restrictive covenant in a deed from Sylvan Properties (Sylvan) was ambiguous (*Marden, J.*) and that the State's proposed development of a statewide landfill on the property violates the terms of the covenant (*Mills, J.*). Because we conclude

1. Following the abolishment of the Maine Waste Management Agency (original co-defendant along with its Executive Director and the State of Maine), the State Planning Office and its director, Evan D. Richert, were substituted as parties pursuant to M.R. Civ. P. 25(d). These appellants are hereinafter referred to as "the State."

that the restrictive covenant language is unambiguous, and that the proposed landfill does not violate the covenant, we vacate the judgment.

[¶ 2] The restrictive covenant at issue was contained within a deed executed July 27, 1990 from Sylvan to the State's predecessor in title, Lincoln Pulp & Paper Company, granting Lincoln a 1500–acre parcel for siting of a landfill for the disposal of boiler ash from its Lincoln mill and, if necessary, from the Eastern Fine Paper mill.[2] The covenant provided:

> This conveyance is made further SUBJECT TO the following covenants and restrictions which shall run with the land:
>
> ....
>
> 2) No solid waste or special waste generated by any person, corporation, municipality, group, individual or entity, other than the said Lincoln Pulp and Paper Co., Inc. or Eastern Fine Paper, Inc., or their successors or assigns, shall be disposed of on the premises, except as required or permitted by law or by the provisions of applicable federal or state license.

[¶ 3] As part of the transaction and in consideration of the purchase of the parcel by Lincoln, in a letter also dated July 27, 1990, Sylvan and its successors agreed not to oppose any applications for license or land use approvals by Lincoln or Eastern Fine Paper for private non-commercial landfills.[3] Extensive negotiations regarding the restrictive covenant preceded execution of the deed.

[¶ 4] In 1992 the State began to investigate purchase of the 1500–acre parcel, and on April 23, 1993 Lincoln conveyed the parcel to the State. The restrictive covenants were incorporated by reference in the deed from Lincoln to the State. The State then proceeded with plans to license and site a publicly owned, non-commercial solid waste facility pursuant to federal and state requirements.

[¶ 5] Sylvan filed a declaratory judgment action in the Superior Court asking the court to declare the State's plans to be in violation of the restrictive covenant in the Sylvan–Lincoln deed. The Superior Court (*Marden, J.*) denied the State's motion for a summary judgment on the basis that the parties' divergent interpretations made the covenant inherently ambiguous.

[¶ 6] After a non-jury trial on the merits, the Superior Court (*Mills, J.*) entered judgment for Sylvan. Citing its prior order denying summary judgment based on the ambiguity of the covenant, the court heard extrinsic evidence concerning the meaning of the covenant, and based on that evidence, concluded that the State's proposed development violated the restrictive covenant. It entered a declaratory judgment to that effect, and from that judgment the State appeals.

[¶ 7] The State contends that the court erred in determining that the covenant was ambiguous and argues that its proposed development of a statewide landfill on the property is permissible by the plain language of the covenant.[4] We agree.

[¶ 8] Construction of a deed "is a matter of law for the court," *Reed v. A.C. McLoon & Co.*, 311 A.2d 548, 551 (Me.1973), and the "Superior Court's construction of the terms of the deed is a legal determination

2. Eastern Pulp and Paper is the parent company to two companies: Lincoln Pulp and Paper and Eastern Fine Paper, which operate paper-making facilities in Lincoln and Brewer, respectively.

3. Lincoln was under a consent decree with the State requiring development of a secure solid waste disposal facility.

4. Following the denial of the State's motion for a summary judgment, the Superior Court essentially accepted the premise that the deed was ambiguous based on the "law of the case." *See Blance v. Alley*, 404 A.2d 587, 589 (Me.1979) ("[T]his doctrine is an articulation of the wise policy that a judge should not in the same case overrule or reconsider the decision of another judge of coordinate jurisdiction."). The "law of the case" explains the deference of the court to the earlier summary judgment order, and supports the State's argument that the court's legal analysis in the order denying summary judgment is subject to our review. *See also Sprague v. Washburn*, 447 A.2d 784, 787 (Me.1982) ("The law of the case ... is not a question of the jurisdiction or the power of a judge to reconsider the prior decision of a colleague. Rather, as a matter of practical judicial policy, a litigant may not, except for the most compelling reasons, reopen a question of law that another judge has already clearly decided in the same action.").

open to corrective appellate review." *Boehner v. Briggs*, 528 A.2d 451, 453 (Me.1987). In interpreting a deed, "a court should give words their general and ordinary meaning to see if they create any ambiguity." *Rhoda v. Fitzpatrick*, 655 A.2d 357, 360 (Me.1995) (using *Webster's Dictionary* and case law to interpret the term "intersection") (citing *Gillespie v. Worcester*, 322 A.2d 93, 95 (Me.1974) (construing deed language "[t]his option, or 'first refusal' " as a first refusal and not an option where deed specified that grantee's rights were subject to grantor's right to convey to family members)). Examination of extrinsic circumstances surrounding execution of a deed is only proper when the language of the deed is ambiguous and the intention of the parties is in doubt. *See Holden v. Morgan*, 516 A.2d 955, 956 (Me. 1986) (explicit metes and bounds description was not rendered ambiguous by addition of reference to an imprecisely identified right of way over "other land of the grantor"); *Chalet Susse Int'l, Inc. v. Mobil Oil Corp.*, 597 A.2d 1350, 1352 (Me.1991) (no plausible interpretation of the phrase "service of automobiles" could encompass the operation of a convenience store, which would "def[y] the common sense understanding of those terms"); *Leavitt v. Davis*, 153 Me. 279, 136 A.2d 535, 537 (1957) ("building or structure," words of plain meaning in ordinary usage, would not be construed to include a parked bus).

[¶ 9] The State argues that the covenant unambiguously allows Lincoln, Eastern Fine Paper, and their successors and assigns to dispose on the property any waste they generate without regard to law or permits, and that it allows all others to do so only if required or permitted by law. Sylvan contends that the State's reading of the covenant renders it "pointless" because it bars only illegal uses, and that the reference in the covenant to the "successors or assigns" of the two paper companies is ambiguous because elsewhere in the deed there are references to the "Grantee and its successors and assigns."

[¶ 10] A review of the language reveals that the covenant is unambiguous and expresses a clear purpose. *Webster's* defines an "assign" as "an assignee," which is further defined: "*Law* 1. a person to whom a claim, right, *property*, etc. is transferred 2. a person appointed to act for another." *Webster's New World Dictionary of the American Language* 83 (2d College Ed.1978) (emphasis added). *Black's* defines assignees as: "those to whom property is, will, or may be assigned.... It generally comprehends all those who take either immediately or remotely from or under the assignor, whether by conveyance, devise, descent, or act of law." *Black's Law Dictionary* (6th ed.1990).

[¶ 11] Although the term "successor" alone might be construed to be limited to a successor corporation, the phrase "successors or assigns" cannot be limited to only corporate successors. Rather, it is broadly inclusive of the various types of succession or assignation.

[¶ 12] Moreover, the purpose of the covenant is clear. It gives Sylvan a private cause of action against the abutting landowner for the illegal, unlicensed disposal of waste generated by those other than that landowner. Without this cause of action, Sylvan's only recourse for relief would be via the enforcement of environmental laws by government regulators. The plain reading of the covenant puts the State's proposed landfill within the final exception clause ("except as required or permitted by law or by the provisions of applicable federal or state license"), because although it plans to dispose of waste generated by entities other than Lincoln, Eastern Paper, and their successors or assigns, it proposes to do so in a lawful manner.[5] Should the State dispose of waste in violation of federal or state law, Sylvan would have a private cause of action for violation of the covenant independent of government enforcement.[6]

---

**5.** Pursuant to 38 M.R.S.A. § 1303–C(7)(D) (Supp. 1997) a waste facility "owned, controlled, operated or used exclusively by" the State Planning Office is exempt from the general ban on the permitting of new commercial solid waste facilities after September 1989. *See* 38 M.R.S.A. § 1310–X(1) (Supp.1997).

**6.** Sylvan argues that during the extensive negotiation process Lincoln understood that Sylvan did not want a large landfill for general use by the public, and that the final agreement was the culmination of intensive discussions in which Sylvan's primary purpose was to prevent just such a landfill. Although a review of the extrin-

[¶ 13] We agree with the State that the Superior Court erred in determining the deed restriction to be ambiguous. That determination contravened the long-established principle that certainty in title to real estate depends upon a reading of the expressed intentions of parties to a deed.[7] As a matter of law the restriction unambiguously allows the State, as successor in title to Lincoln, to operate a non-commercial landfill as permitted by law and within the strictures of applicable state and federal licenses.

The entry is:

Judgment vacated. Remanded for entry of judgment for defendants.

---

sic circumstances surrounding the deed might well reveal intentions of the parties at odds with the language in the deed, we decline to examine them in the face of a clear expression of the covenantors' rights and limitations set out in the deed.

**7.** We have said:

In construing the grant we are to give effect, if possible, to the intention of the parties, so far as it can be ascertained in accordance with legal canons of interpretation. We are to give effect to the expressed, rather than the surmised, intent. We are to consider all the words of the grant in the light of the circumstances and conditions attending the transaction. But we must consider and construe the grant according to settled rules of construction. They are rules and construe the grant according to settled rules of construction. They are rules of property. And the security of real estate titles depends upon a strict adherence to these rules of construction.

*Sargent v. Coolidge*, 399 A.2d 1333, 1344 (Me. 1979) (citing *McLellan v. McFadden*, 114 Me. 242, 246–247, 95 A. 1025, 1028 (1915)).