1999 ME 165

**Katherine BENNETT, et al.**

v.

**Joseph TRACY, et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs Oct. 28, 1999.

Decided Nov. 19, 1999.

Anthony J. Giunta, Ellsworth, for plaintiffs.

Sandra Hylander Collier, Ellsworth, William C. Reiff, Mt. Desert, (for Joseph Tracy), George W. Kurr Jr., Bangor, (for Jeffrey Wooster), for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

WATHEN, C.J.

[¶ 1] Joseph Tracy appeals from a judgment entered on Katherine Bennett's motion for partial summary judgment in Superior Court (Hancock County, *Mead, J.*) permanently enjoining Tracy from using his property for any commercial purpose. On appeal, Tracy contends that the court erred when it denied his own motion for *partial summary judgment* and granted Bennett's because the restrictive covenant in his deed that formed the basis of the injunction does not prohibit commercial uses. Alternatively, he argues that a genuine issue of material fact remains as to *whether* Bennett was estopped from enforcing the covenant. Finding no error, we affirm the judgment.

[¶ 2] The relevant facts may be summarized as follows: In 1996, Jeffrey Wooster conveyed Lot 11 in the subdivision "Denning Brook Estates" located in Mount Desert to Tracy. Wooster was the developer of the subdivision and was, either directly or through a third party, the common grantor of both Tracy and the plaintiffs. Tracy's deed contained several restrictive covenants, though the present dispute centers primarily around the first: "The premises shall be used only for the purpose of erecting one single family residence of at least 1400 square feet of living area and outbuildings appropriate to the residence.... All buildings shall be built utilizing colonial architectural design and shall be approved by Grantors."

[¶ 3] Prior to the sale of the property, Tracy took Wooster to his then current woodworking shop and indicated that he would like to duplicate that shop on Lot 11.[1] Wooster gave Tracy verbal permission to build a duplicate shop on Lot 11, and Tracy agreed to purchase the property. On the day of the closing, Wooster signed an addendum to the purchase and sale agreement that indicated that: "A residence and wood working studio similar to [Tracy's then current residence] or a design utilizing a pitched roof and wood or stucco siding are acceptable to me and meet the requirements of the protective covenants." The addendum also indicated that, in the absence of a Homeowners' Association, "Jeffrey Wooster is the administer [*sic*] of the protective covenants."[2]

[¶ 4] In 1998, Katherine Bennett and several other of Tracy's neighbors (collectively Bennett) instituted the present action against Tracy and Wooster. These neighbors own lots in the subdivision, and received their property by a deed containing the same restrictions found in Tracy's deed.

---

1. Tracy does not dispute that the duplicate woodworking shop he constructed on Lot 11 is a commercial use of the property.

2. After purchasing the property, Tracy appears to have applied for a building permit to construct his shop. This permit appears to have been approved. Tracy also appears to have applied for a variance, or possibly a conditional use permit—the record is unclear which—to allow the use of the woodworking shop in Mount Desert. This later permission is apparently the subject of an appeal presently pending in Superior Court.

[¶ 5] Bennett believed that these restrictions prevented Tracy from operating his woodworking shop as a commercial enterprise; she sought a permanent injunction against Tracy.[3] Both Tracy and Bennett filed cross motions for partial summary judgment. Following a hearing, the court issued an order denying Tracy's motion and granting Bennett's motion. The court ordered a permanent injunction against Tracy, preventing him from operating any sort of commercial enterprise from Lot 11. Tracy filed a motion for clarification of the order, arguing that there remained issues for trial. The court construed the motion as either a motion to alter or amend the judgment or a motion for relief from judgment and denied it.

[¶ 6] After an initial appeal was dismissed for lack of a final judgment, the court issued an amended judgment and decree in which it reaffirmed its earlier order and permanently enjoined Tracy "from using the premises described as Lot 11 ... as a woodworking shop or for any other commercial purpose." The court also found, pursuant to M.R. Civ. P. 54(b) that there was "no just reason for delay in the entry of a final judgment on Count 1 because" the permanent injunction against Tracy made the remaining claims against Wooster moot. The court accordingly directed entry of a final judgment. Tracy now appeals from that judgment.

[¶ 7] The entry of a summary judgment is reviewed "for errors of law, viewing the evidence in the light most favorable to the party against whom the judgment was entered." *Peterson v. State Tax Assessor*, 1999 ME 23, ¶ 6, 724 A.2d 610, 612. The proper construction of a deed is a question of law, which we review *de novo*. *See Sylvan Properties Co. v. State Planning Office*, 1998 ME 106, ¶ 8, 711 A.2d 138, 139.

[¶ 8] The first step in any analysis of the language in a deed is to "give words their general and ordinary meaning to see if they create any ambiguity. If the words create no doubt, the deed is clear and unambiguous." *Rhoda v. Fitzpatrick*, 655 A.2d 357, 360 (Me.1995) (internal citations omitted). It is only if the language is ambiguous that extrinsic circumstances may be examined in an attempt to ascertain the parties' intentions. *See Sylvan Properties Co.*, 1998 ME 106, ¶ 8, 711 A.2d at 140. On the other hand, if "the language of a deed is unambiguous, it will guide interpretation of the parties' intent." *Jones v. Carrier*, 473 A.2d 867, 869 (Me. 1984).

[¶ 9] Tracy's principal argument on appeal is that the restriction limiting the use of the property "only for the purpose of erecting one single family residence" is ambiguous. Looking to the contract as a whole, Tracy argues, ineluctably leads to the conclusion that this restriction only governs the structural basis of construction on the property rather than the later use of that property. Thus interpreted, the covenant would not limit commercial use.

[¶ 10] To accept Tracy's argument would mean that a factory could be located on Lot 11 so long as the building was 1400 square feet and in a colonial architectural style. Indeed, Tracy's reading of this requirement removes all meaning from the phrase "single family residence." If the parties had intended a structural restriction, the phrase "single family residence" would have no purpose other than to frustrate that intent. *See, e.g., Leavitt v. Davis*, 153 Me. 279, 281–82, 136 A.2d 535, 537 (1957) (noting that if the parties had intended to prevent any use of the servient property that blocked the view from the dominant, they could have used the phrase "any use" rather than "building or structure"; a parking lot did not violate the covenant because a car was neither a building nor a structure). The covenant unambiguously prevents commercial use of

---

**3.** Only the first count of the complaint was directed against Tracy; the remaining four counts in the complaint sought various forms of relief against Wooster alone.

the primary structure. *See, e.g., Boehner v. Briggs,* 528 A.2d 451, 452 (Me.1987) (holding that language restricting land to a "one family dwelling" prevented multi-family houses but did not proscribe the architectural method of creating the dwelling).

[¶ 11] Tracy next argues that the phrase "outbuildings appropriate to the residence" is ambiguous and that reference must be made to the zoning ordinances of Mount Desert to resolve this ambiguity. Giving those words their ordinary meaning, the phrase describes separate buildings, such as a garage, that are commonly found with residential homes and that are commonly associated with the residential use of property. There is no ambiguity within the phrase that would allow it to encompass a commercial woodworking shop. Moreover, even if there were any ambiguity in the deed, zoning ordinances cannot aid in its interpretation.[4] It is settled law in Maine that zoning and covenants are separate realms of land use control and that neither directly influences the interpretation of the other. *See, e.g., Our Way Enterprises, Inc. v. Town of Wells,* 535 A.2d 442, 444 (Me.1988); *Lakes Environmental Association v. Town of Naples,* 486 A.2d 91, 96 n. 1 (Me.1984); *Whiting v. Seavey,* 159 Me. 61, 68, 188 A.2d 276, 280 (1963) ("Contractual restrictions in a deed are not abrogated or enlarged by zoning restrictions.").

[¶ 12] Because there is no ambiguity in the deed, the court did not err when it denied Tracy's motion for summary judgment. Tracy argues that, even so, there remains a genuine issue of material fact that should have prevented the grant of Bennett's motion. According to Tracy, there remains a factual issue of whether, when Wooster approved construction of the woodworking shop on Lot 11, he acted as agent for Bennett. The factual issue is

material, Tracy argues, because if Wooster was Bennett's agent, Bennett is now estopped from denying the validity of that approval.

[¶ 13] A party opposing a motion for summary judgment must file a statement of material facts, "*supported by appropriate record references,* as to which it is contended that there exists a genuine issue to be tried." M.R. Civ. P. 7(d)(2) (emphasis added). "All material facts set forth in the statement required to be served by the moving party, if supported by appropriate record references, will be deemed to be admitted *unless properly controverted* by the statement required to be served by the opposing party." *Id.* (emphasis added).

[¶ 14] Tracy submitted a statement of material facts with his motion for partial summary judgment, but this statement did not contain any record references. Tracy did not file an additional statement in opposition to Bennett's motion, but instead adopted the statement filed in support of his own motion. We do not need to decide whether it was appropriate for Tracy to neglect to file a separate statement in opposition to Bennett's motion. Even if he could rely on his statement offered in support of his own motion, the failure to provide record references means that "the contents of [Tracy's] statement are unsupported speculation that does not generate a genuine issue of material fact." *Biette v. Scott Dugas Trucking and Excavating, Inc.,* 676 A.2d 490, 494 (Me.1996). Bennett's Statement of Material Facts Not in Dispute contains the following fact: "The restrictive covenants contained in each of the conveyances of lots in Denning Brook(s) do not grant Wooster, either implicitly or explicitly the power or authority to unilaterally change or modify the restrictive covenants." Because of Tracy's

---

**4.** Tracy points to the fifth restrictive covenant as support for his position: "All construction and other activities on the premises shall be in compliance with all rules and regulations promulgated from time to time by various governing administrative agencies ...." This

covenant allows neighbors to maintain a private cause of action if, for example, Tracy had not complied with the Mount Desert ordinances when he constructed his wood working studio. *See Sylvan Properties, Co.,* 1998 ME 106, ¶ 12, 711 A.2d at 140.

failure to properly contest that statement, there is no factual issue remaining for trial regarding Wooster's authority to act for the plaintiffs.

The entry is:

Judgment affirmed.

