STATE OF MAINE
PENOBSCOT, SS.

SUPERIOR COURT
Docket No. CV-00-109
JLH - PEN - 2/11/2002

Vernon Haines, for himself and o/b/o
    The Fin and Feather Club,
        Plaintiffs

v.

Great Northern Paper, Inc. et al,
        Defendants

and

Rich Timber Holdings, LLC,
    Party-in-Interest

FILED AND ENTERED
SUPERIOR COURT

FEB 1 1 2002

PENOBSCOT COUNTY

**ORDER**

DONALD L. GARBRECHT
LAW LIBRARY

FEB 14 2002

Pending before the court are the plaintiffs' motion for joinder, the motions for summary judgment filed by all parties and various motions relating to the record on summary judgment.

In this action, the plaintiffs seek declaratory relief and money damages for breach of a contract executed by plaintiff Fin and Feather and defendant Great Northern Paper, Inc. ("GNP"), under which GNP agreed not to impose access fees for the non-commercial use of its forest lands by Maine residents. In count 1, the plaintiffs allege that GNP breached the contract because it conveyed land to third parties who then imposed access fees to that land. The plaintiffs seek relief in count 2 against defendant Great Northwoods, LLC, one of the grantees of GNP's property, based on allegations that it was subject to the prohibitions created by the contract

1

executed by the plaintiffs and GNP, and that it violated the provisions of the agreement by imposing access fees for the use of land covered by the contract. In count 3, the plaintiffs allege that defendant McDonald Investment Co., Inc. ("McDonald"), another grantee of property subject to the agreement, is liable for breach of contract based on an analysis similar to that alleged in count 2. Finally, in count 4, the plaintiffs allege that the defendants denied them access to or egress from great ponds in violation of 17 M.R.S.A. § 3860.[1]

## A. Motion for joinder

In their motion for joinder dated June 7, 2001, and filed on June 8, 2001, the plaintiffs request leave to join Yankee Forest, LLC ("Yankee") as a defendant.

The plaintiffs filed their original complaint in May 2000 and an amended complaint in June 2000. A scheduling order was issued on July 27, 2000. Under that order, all parties were to be joined no later than November 27, 2000, unless otherwise ordered by the court. In that order, April 1, 2001, was fixed as the discovery deadline.

On April 2, 2001 (the day after the discovery deadline), the plaintiffs filed a motion to amend their complaint to add four parties as defendants. One of the proposed new defendants had been a party-in-interest in the original amended complaint, and, by order of court, any claim against that party had been dismissed. *See* note 1 *supra*. Another of the proposed new defendants was Yankee Forest, LLC, who is the subject of the plaintiff's

---

[1] The complaint also named three parties as parties-in-interest. Two of those parties-in-interest successfully moved to dismiss the complaint as against them. The third party-in-interest, Rich Timber Holdings, LLC, did not file a motion to dismiss and therefore remains in this case.

motion at bar. The plaintiffs' motion to amend their complaint was denied by order dated May 18, 2001. Thus, the pending motion is the plaintiff's second effort to join Yankee as a party-defendant.

The basis for the pending motion is identical to that underlying the plaintiffs' earlier motion: the motion rests on allegations that Yankee acquired an ownership interest in some of the land that is the subject of the contract executed by GNP and the plaintiffs, and Yankee is bound by the provisions of that contract. In their memorandum filed in support of the motion, the plaintiffs note that Yankee acquired its interest in April 1999 -- more than one year prior to the commencement of this action. The reasons supporting the denial of the plaintiffs' first motion to join Yankee as a party apply here: the motion to join was filed well after the presumptive deadline for joinder of parties under the terms of the scheduling order, they have not shown cause for that substantial delay and discovery had closed more than two months before the pending motion was filed. The plaintiffs argue that if Yankee is not joined as a party to this action, Yankee may not be bound by the outcome of this case. Under the circumstances noted above, however, this possible effect does not warrant the disruption to the orderly pretrial process established in the scheduling order.

**B. Motion for summary judgment**

**(1) Record on summary judgment**

On June 4, 2001, the plaintiffs filed their motion for summary judgment. The motion was accompanied by a statement of material fact that, on its face, is defective, because none of the material facts is "supported by a record citation as required by" M.R.Civ.P 56(h)(4). *See*

3

M.R.Civ.P. 56(h)(1). Accompanying the motion and the defective SMF, the plaintiffs filed a seven page affidavit of Vernon Haines and seventeen documents that collectively consist of hundreds of pages and consume nearly an entire court file folder.

On the same date as the plaintiffs' filing, GNP and party-in-interest Rich Timber Holdings, LLC ("Rich") filed a motion for summary judgment on the counts that set out claims against them, namely, counts 1, 2 and 4. The remaining two defendants, Great Northwoods and McDonald, also filed a motion for summary judgment on June 4. The statements of material fact accompanying the latter two motions comply with the requirements of rule 56(h). The plaintiffs filed an objection to the two motions for summary judgment. However, the plaintiffs did not file a reply statement of material fact in response to the statements of material fact supporting the defendants' motions.

The defendants and the party-in-interest filed objections to the plaintiffs' motion for summary judgment. The objection of GNP and Rich was filed on June 25, and the objection of Great Northwoods and McDonald was filed on June 28. Both of those objections contained arguments (presented either directly or by reference) that the plaintiffs' statement of material fact did not satisfy the requirements of rule 56(h). GNP and Rich also filed a joint opposing statement of material fact in response to the plaintiffs' statement. *See* M.R.Civ.P. 56(h)(2). (In that opposing statement, GNP and Rich sought leave to amend their opposing statement if the plaintiffs were given leave to amend their original SMF to include record references. At that time, the plaintiffs had not filed such a motion for leave.) The opposing SMF responded to each of the plaintiffs' statements

and added two additional facts beyond those asserted by the plaintiffs. Additionally, on June 25, GNP and Rich filed an independent motion to strike the plaintiffs' submissions because of the defective rule 56(h) statement.

The plaintiffs did not file a response to these objections within the seven days permitted by rule, *see* M.R.Civ.P. 7(d), and they did not file a reply statement of material facts to address the two additional statements of material fact included in the opposing statement of material fact filed by GNP and Rich. *See* M.R.Civ.P. 56(h)(3). Instead, on July 18, the plaintiffs filed a motion to amend their original statement of material fact to include record references. Those filings were accompanied by an objection to the motion to strike filed by GNP and Rich. The plaintiffs also filed two opposing statements of material fact; one was in response to the summary judgment motion filed by GNP and Rich, and the other was in response to the summary judgment motion filed by Great Northwoods and McDonald.

### (a) Record on plaintiffs' motion

The elements of a rule 56(h) statement of material fact are made clear by the terms of the rule itself and by interpretive caselaw:

> The absence of supporting record references in the statement of material facts is fatal to the corporation's motion. *See Pratt v. Ottum*, 2000 ME 203, ¶ 15, 761 A.2d 313, 318 n.8. A statement of material facts *must* directly refer the court to the specific portions of the record from which each fact is drawn. *See Biette v. Scott Dugas Trucking & Excavating, Inc.*, 676 A.2d 490, 494 (Me. 1996). The court is neither required nor permitted to independently search a record to find support for facts offered by a party. *See Dumont v. Fleet Bank of Maine*, 2000 ME 197, ¶ 13, 760 A.2d 1049, 1053-54. In the absence of specific record references, a proffered fact is not properly before the court and cannot provide a basis for judgment. *See Biette*, 676 A.2d at 494; *Diversified Foods, Inc. v. First Nat'l Bank*

5

*of Boston*, 605 A.2d 609, 612 (Me. 1992).

*Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 9, 770 A.2d 653, 656 (emphasis in original).[2] These procedural principles discussed by the Law Court in *Levine* cannot be distinguished from the case at bar on the basis of any differences in the factual setting of the two cases: the requirements of a proper summary judgment presentation are simply too well established, as shown by the number of cases cited in *Levine* and in many other cases not noted there. *See, e.g., Corey v. Norman, Hanson & DeTroy,* 1999 ME 196, ¶ 8, 742 A.2d 933, 938; *Bennett v. Tracy*, 1999 ME 165, ¶ 13, 740 A.2d 571, 574; *Moen v. Town of Fairfield*, 1998 ME 135, ¶8, 713 A.2d 321, 324; *Gerrity Co., Inc. v. Lake Arrowhead Corp.*, 609 A.2d 293, 295 (Me. 1992).

The plaintiffs argue that the record references are self-evident and that they did not need to make those references in their SMF. This contention, however, does not account for the plain requirements of the rule.[3] Further, particularly in the context of this case, those requirements are not hollow. The evident purpose of record references is to impose on the proponent of material facts the responsibility for demonstrating where those facts enjoy support in the factual record. Here, the plaintiffs

---

[2]*Levine* analyzed the requirements of a statement of material fact as established in M.R.Civ.P. 7(d) in its earlier formulation. The substance of rule 7(d) is now found in rule 56(h), due to amendments to Maine Rules of Civil Procedure that became effective on January 1, 2001. The *Levine* Court noted that the principles governing former rule 7(d) were incorporated into current rule 56. 2000 ME 77, ¶ 9 n.7, 770 A.2d at 656.

[3]In unrelated cases, this court has ruled that even where the record on summary judgment is not extensive, a party's failure to provide record references is fatal to a summary judgment submission. The rules are clear; they serve an important function in conserving judicial resources; and they do not distinguish between thin court files and thick court files.

submitted a considerable quantity of extrinsic material in support of their motion for summary judgment. The Law Court has made it clear that it is the party filing a submission who bears the burden of correlating specific portions of the record to the SMF.

For these reasons, the court strikes the SMF filed by the plaintiffs on June 4. The court declines to grant the plaintiffs' motion to allow the late filing of their amended SMF that would add the record references to the original statement. Although the plaintiffs argue that rules 7 and 56 contemplate the possibility of a staggered filing process such as would result here if their motion to amend were granted, the rules clearly are structured in a way that forecloses an amendment in this circumstance. Rule 56(h) requires that a motion for summary judgment "shall be supported by statements of material fact. . . ." A party opposing a motion for summary judgment is required to file an opposing statement of material fact in order to controvert any statements included in the moving party's SMF. These statements of material fact (along with any reply SMF that the moving party chooses to file under rule 56(h)(3)) form the factual predicate for the legal analysis generated by the motion. The significance of a proper record is made clear in cases such as *Levine*. If a party were permitted to amend a defective SMF as the plaintiffs seek to do here, a party opposing a summary judgment motion would be placed in a difficult situation -- if not an impossible one -- in attempting to respond, because the moving party failed to establish a proper factual basis for the motion.

Additionally, an opposing party suffers the same prejudice as the court: the opposing party would be required to search through a record on summary judgment in an attempt to find a possible source of a material

7

fact. The rules were designed to avoid these burdens and inefficiencies. Therefore, the plaintiffs' motion to amend their SMF filed on June 4 must be denied.

Because the plaintiffs' motion for summary judgment is thereby not supported by a proper statement of material fact, the motion is dismissed.[4]

### (b) Record on defendants' motions

In their motion to amend, the plaintiff also seek leave to file an opposing statement of material fact responsive to each of the defendants' summary judgment motions. This aspect of the motion also must be denied. Maine law clearly provides that the statement of material facts filed in support of a motion for summary judgment is deemed admitted if an opposing party fails to file an opposing statement. *See* M.R.Civ.P 56(h)(4) ("Facts contained in a supporting. . .statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."); *Dumont*, 2000 ME 197, ¶¶ 12-13, 760 A.2d at 1052. Here, the defendants' statements of material fact are supported by record references. Without good cause, the plaintiffs failed to file an opposing statement of material fact in response to the defendants'. In the circumstances of this case, there is no legitimate reason to allow an opposing statement to be filed beyond the time limits established in the rule, particularly because leave to do so will trigger the moving parties' right to respond and thereby defeat the orderly and logical process that governs summary judgment motion practice.

---

[4]Even if the motion itself were not dismissed for the reasons stated in the text of this order, the court would deny the motion on its merits because the plaintiffs did not submit a proper statement of material fact to support their legal arguments on the summary judgment motion. Therefore, in the alternative, the court denies the plaintiffs' motion for summary judgment.

8

Consequently, the statements of material fact submitted by GNP and Rich, and by Great Northwoods and McDonald are deemed to be admitted.

## (2) Merits of motions for summary judgment

The resulting record on summary judgment establishes that GNP and the Fin and Feather Club entered into an agreement that became effective in October 1996. GNP SMF ¶ 1; GNW SMF ¶ 9.[5] GNP owned certain forest land within a gate-system in Maine. GNP SMF ¶ 4. Under the terms of that agreement, GNP agreed that while the agreement was in effect, ". . .it [GNP] will eliminate current, and not impose future, access fees on non-commercial, day use by Maine residents of its forest lands within the company's gate system in the State of Maine. . . ." *Id.* *See also* GNW SMF ¶ 8. The agreement would remain in effect for the period of time (30 years) that GNP held licenses issued by the Federal Energy Regulatory Commission. GNP SMF ¶ 5.[6] The contract does not operate to bind any successors or assignees of the forest land included within the scope of that agreement, GNP SMF ¶ 11, and the agreement does not provide that its terms would survive any transfer of GNP's forest land to other parties, GNP SMF ¶ 12, GNW SMF ¶ 11. The parties did not discuss any such contingencies prior to the execution of the contract. *Id.* GNP considered the obligations under the agreement to be its own and applicable to no other person or entity. GNP SMF ¶ 13; GNW SMF ¶ 10. Neither GNW nor

---

[5]The statement of material facts filed by GNP and Rich will be designated by "GNP SMF," and the one submitted by Great Northwoods and McDonald will be designated by "GNW SMF."

[6]Fin and Feather and GNP entered into the agreement as part of Fin and Feather's decision to withdraw its objection to GNP's license applications that it had filed with FERC. GNP SMF ¶ 2; GNW SMF ¶ 7.

any other person or entity was ever made a party to the contract. GNP SMF ¶ 15. Further, the agreement did not restrict or limit GNP's right to sell its property, and GNP and Fin and Feather did not discuss this issue prior to the execution of the contract. GNW SMF ¶¶ 12, 14.

In March 1999, GNP conveyed to defendant Great Northwoods portions of the forest land that was within GNP's gate-system. GNP SMF ¶ 9; GNW SMF ¶ 24. Without involvement by GNP, Great Northwoods then began to impose access fees for non-commercial use of its land by Maine residents. GNP SMF ¶ 10; GNW SMF ¶ 26. Great Northwoods has not transferred or conveyed any access fees collected on its behalf to GNP or to any other landowner. GNP SMF ¶ 32.

During the time the agreement has been in effect, GNP has not imposed access fees in violation of the agreement. GNP SMF ¶¶ 18, 19, 23.

In their motions, the defendants and the party-in-interest argue that GNP cannot be held contractually liable for the imposition of access fees by other entities, and that the parties in this action that have imposed access fees cannot be liable on the basis of the agreement between GNP and Fin and Feather.[7]

---

[7] In their motions, the defendants and party-in-interest make two other contentions that need not be addressed here. First, they argue that the plaintiffs do not have rights based on any form of property interest such as easements, covenants or equitable servitudes. Although the plaintiffs previously have alleged that they have rights arising from an easement, *see* GNP SMF ¶ 20, they now expressly disclaim any such analysis. *See* "Plaintiffs' Response to Summary Judgment Submissions of All Defendants" dated June 22, 2001, at p. 1.

Second, despite the summary judgment motions to dismiss count 4 of the complaint (which alleges a deprivation of access to great ponds, *see* 17 M.R.S.A. § 3860), the plaintiffs have not made any argument in opposition to this aspect of the motions. In any event, there is nothing in the record on summary judgment to support a factual argument that any conduct by any of the parties affected the plaintiffs' access to any great ponds.

10

Summary judgment is proper only if the record on summary judgment shows that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *See* M.R.Civ.P. 56. To survive a motion for a summary judgment, the opposing party must produce evidence that, if produced at trial, would be sufficient to resist a motion for a judgment as a matter of law; "[t]he plaintiff must establish a *prima facie* case for each element of the cause of action." *Rodrigue v. Rodrigue*, 1997 ME 99, ¶8, 694 A.2d 924, 926.

**(a) Claims against GNP**

The plaintiffs and GNP agree that the express terms of their contract do not prohibit GNP from conveying any of its forest land within the gate-system to third parties and that the contract does not expressly make GNP liable for the imposition of access fees by any such grantees. Rather, the plaintiffs argue that the agreement includes implied provisions that have those effects.

> The implication of a contract term is only justified 'when the implied term is not inconsistent with some express term of the contract and when there arises from the language of the contract itself, and circumstances in which it was entered into, an inference that it is absolutely necessary to introduce the terms to effectuate the intention of the parties.'

*Top of the Track Associates v. Lewiston Raceways, Inc.*, 654 A.2d 1293, 1295 (Me. 1995) (citation omitted).

Despite the plaintiffs' argument, the implied contractual terms urged by the plaintiffs do not satisfy the criteria set out in *Top of the Track*. First, the express language of the contract operates to bind GNP alone. The agreement provides, ". . .*it* [GNP] will eliminate current, and not impose

1 1

future, access fees on non-commercial, day use by Maine residents of *its* forest lands within *the company's* gate system in the State of Maine. . . ." GNP SMF at ¶ 4 (emphases added). As revealed by the present record, the agreement does not preclude any other person or entity from imposing the access fees that, under the contract, GNP itself could not impose. Therefore, the express terms of the agreement do not limit GNP's right to convey any of the subject property to third parties free of the restrictions created by the agreement, and those terms do not make GNP accountable for the acts of others. The implied term proposed by the plaintiffs would contravene this express language.

Second, under *Top of the Track*, an implied term can be injected into the express provisions of a contract only to carry out the intention of the parties. Here, the plaintiffs argue that the parties' intention would be frustrated if GNP were allowed simply to divest itself of the property that is the subject of the agreement. However, as established by the record on summary judgment, GNP did not intend that the agreement would limit its right to convey its gate-system forest land to other parties, and it did not intend that it would become liable under the contract if those grantees imposed an access fee otherwise prohibited under the contract. Indeed, the parties to the contract did not even discuss this issue during the negotiations that led to the formation of their contract.

The court recognizes that there can be no direct evidence of a party's state of mind and that circumstantial evidence, based on an examination of surrounding objective circumstances, can be sufficient to establish mental state. *See State v. Anthoine*, 2002 ME 22, ¶ 10, ___ A.2d ___, ___ (analysis of evidence of state of mind in prosecution for false swearing). In the case

at bar, however, the defendants' statement of material fact included affirmative factual assertions regarding GNP's contractual intentions. *See* GNP SMF ¶ 11-13. The plaintiffs could have responded to those assertions with either denials or qualifications, and those responses could have been based on the same circumstantial analysis that form the basis for their legal argument here.[8] The plaintiffs failed to file *any* response to GNP's statement of material fact. Therefore, the record establishes affirmatively and conclusively that GNP did not intend to be bound by the implied terms urged by the plaintiffs. In *Top of the Track*, the Law Court specifically found that there existed a genuine issue of material fact regarding the parties' intentions. 654 A.2d at 1296. Here, such a factual issue does not exist because the record eliminates it.

The plaintiffs also argue that GNP's conveyance of land subject to the agreement violates an implied contractual covenant of fair dealing. This argument is based on the circumstances of the conveyances by GNP and the relationship between GNP and the grantees. A covenant of fair dealing cannot be implied into this agreement because such a covenant exists only in contracts governed by limited portions of the Uniform Commercial Code. *See First NH Banks Granite State v. Scarborough*, 615 A.2d 248, 250-51 (Me. 1992). Even if such a covenant could be implied into the parties' agreement as a matter of law, the record on summary judgment does not generate a factual argument that GNP breached the covenant, because the record includes no factual data regarding the circumstances of the

---

[8]The plaintiffs argue, in essence, that the parties (including GNP) could not have intended to allow GNP to convey the property subject to the agreement, because such a transfer would simply allow other parties to do what GNP could not do under the contract.

13

conveyances and the relationship between GNP and the grantees.

Finally, the plaintiffs argue that GNP and the grantees are alter-egos and that GNP is therefore liable for any conduct of the grantees that constitutes a breach of the agreement. The record on summary judgment, however, does not provide any information regarding those relationships,[9] and this argument cannot be sustained on that record.

### (b) Claims against other parties[10]

For the reasons noted above, the record on summary judgment establishes that the agreement between Fin and Feather and GNP did not limit GNP's right to transfer any of its gate-system forest land to other parties, and the record shows that the agreement did not expose GNP to

---

[9]In their opposition to the defendants' motions for summary judgment, the plaintiffs make references to a number of factual matters that are not included in the record. They refer, for example, to the reasons why Great Northwoods created Rich, to the absence of any consideration for the land conveyances, to the identity of shareholders, officers and directors among some of the entities involved in this case, to the division of user fees among those entities and to matters that occurred as part of the FERC administrative proceedings. None of this is supported by the record, and the court disregards these factual references.

[10]The amended complaint does not assert any claims against Rich, which is the remaining party-in-interest, and in the context of the motions at bar, the plaintiff has not argued the reasons why Rich should remain a party. (Indeed, two other parties-in-interest were dismissed from the case previously because the plaintiffs did not demonstrate any reason why they should participate. See Order dated January 18, 2001. Rich did not make such a motion, and so the order of dismissal did not extend to Rich.) Because summary judgment will be entered for the defendants on all claims asserted against them, any involvement by Rich in this case should terminate as well.
As is noted in this order, in their amended complaint the plaintiffs alleged that McDonald acquired forest land that was subject to the agreement between Fin and Feather and GNP. The record on summary judgment does not establish this, and the record does not shed any light on McDonald's role in the circumstances underlying this action. Nonetheless, the court's consideration of the pending motions, as they relate to McDonald, is based on the plaintiffs' allegations that McDonald acquired gate-system forest land from GNP (indeed, the plaintiffs' objection to McDonald's motion makes reference to this circumstance); this puts McDonald in a legal situation identical to Great Northwood's, namely, as shown by the record, a grantee of GNP forest land.

14

contractual liability for any other party's imposition of access fees. Conversely, the record on summary judgment establishes that the agreement between Fin and Feather and GNP did not bind any other party and that the contract does not restrict their use and management of property acquired from GNP. The reasons noted in the preceding section of this opinion compel this conclusion: the grantees were not parties to the contract; the express terms of the contract operated to bind GNP alone; and the record does not support a contention that the grantees were alter-egos of GNP or that the distinction between corporate entities should be disregarded, *cf. Johnson v. Exclusive Properties Unlimited*, 1998 ME 244, ¶ 7, 720 A.2d 568 (identifying specific factual considerations relevant to the question of "whether a shareholder has abused the privilege of a separate corporate identity"); *Theberge v. Darbro, Inc.*, 684 A.2d 1298, 1301 (Me. 1996).

The plaintiffs argue that the deeds of conveyance incorporate the access fee restrictions created in the agreement between GNP and Fin and Feather. They further contend that the grantees had been placed on notice of those restrictions because the agreement was a matter of public record arising from the FERC licensing proceeding. The record as established by this order does not support this factual analysis. *See also* note 9 *supra*. Consequently, there is no occasion to address the merits of these arguments.

The entry will be:

Order dated February 10, 2002, filed by the court. For the reasons stated in that order, the court enters the following orders:

The plaintiffs' motion for joinder is denied.

The motion of defendant Great Northern Paper, Inc. and party-in-Interest Rich Timber Holdings, LLC to strike is granted. The plaintiffs' statement of material fact filed in support of their motion for summary judgment is stricken. The plaintiffs' motion to amend the statement of material facts is denied.

The plaintiffs' motion for summary judgment is dismissed or, in the alternative, denied.

The summary judgment motion of defendant Great Northern Paper, Inc. and party-in-interest Rich Timber Holdings, LLC is granted. Judgment is granted for those parties on all claims asserted against them.

The summary judgment motion of defendants Great Northwoods, LLC and McDonald Investments Co., Inc. is granted. Judgment is granted for those parties on all claims asserted against them.

Defendants Great Northern Paper, Inc., Great Northwoods, LLC and McDonald Investments Co., Inc. and party-in-interest Rich Timber Holdings, LLC are awarded their costs of court.

Dated: February 10, 2002

_____
Justice, Maine Superior Court

16

STATE OF MAINE
PENOBSCOT, SS.

SUPERIOR COURT
Docket No. CV-00-109
JLH-PEN-2/00/~~~

Vernon Haines, for himself and o/b/o
The Fin and Feather Club,
Plaintiffs

v.

FILED AND ENTERED
SUPERIOR COURT

FEB 2 2 2002

PENOBSCOT COUNTY

Great Northern Paper, Inc. et al,
Defendants

**ORDER**

and

DONALD L. GARBRECHT
LAW LIBRARY

FEB 25 2002

Rich Timber Holdings, LLC,
Party-in-Interest

The order and judgment dated February 10, 2002, failed to formally dispose of the counterclaims filed by defendant/counterclaim plaintiff Great Northern Paper, Inc. and party-in-interest/counterclaim plaintiff Rich Timber Holdings, LLC. This order shall supplement that prior order, which shall remain in full force and effect. This order is intended to finally dispose of all claims asserted in this action.

For the reasons set out in the order dated February 10, 2002, judgments on the counterclaims of defendant/counterclaim plaintiff Great Northern Paper, Inc. and party-in-interest/counterclaim plaintiff Rich Timber Holdings, LLC are entered for those counterclaim plaintiffs. Declaratory judgment on those counterclaims is entered as follows:

The settlement agreement between Fin and Feather Club and Great Northern does not bind any parties other than Great Northern or have binding effect on lands not owned by Great Northern. The settlement agreement relates only to land owned by Great Northern, does not require Great Northern to impose the obligations under the agreement on any

1

purchaser from Great Northern and is not binding on any entity that has purchased land from Great Northern. Neither Great Northern nor Rich Timber is liable to Maine residents who, as the result of the imposition of such fees by other parties on or about April 28, 1999 and subsequent to that date, have paid access fees for non-commercial day use of forest lands previously owned by Great Northern and within Great Northern's gate-system. Neither Great Northern nor Rich Timber is liable for reimbursement to any party or to Maine residents for access fees for non-commercial day use of forest lands not owned by Great Northern.

Dated: February 21, 2002

_____
Justice, Maine Superior Court

2

| Date Filed 5/31/2000 | PENOBSCOT | Docket No. CV-2000-109 |

County

Action DECLARATORY JUDGMENT

JUSTICE JEFFREY L.HJELM, SPECIALLY ASSIGNED
1/19/2001
*Wagner & North Maine Woods Dismissed
cross-claims against them by Rich Timber
& GNP dismissed/GNP's & Rich Timber's Cross-
claim against Northwoods & McDonald dismissed
    VERNON HAINES, for himself and o/b/o
    THE FIN AND FEATHER CLUB

COUNTERCLAIMS AND CROSS-CLAIMS

GREAT NORTHERN PAPER, INC. and
MCDONALD INVESTMENT, INC., Defendants
WAGNER FOREST MANAGEMENT, LTD, NORTH MAINE
WOODS, INC., RICH TIMBER HOLDING, LLC and
GREAT NORTHWOODS, LLC(Parties-in-Interest)

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| BILLINGS & SILVERSTEIN<br>P O BOX 1445 - 47 Main Street<br>BANGOR MAINE 04402 1445<br>BY: J. Hilary Billings, Esq. | EATON PEABODY BRADFORD & VEAGUE<br>P O BOX 1210, BANGOR, ME 04402-1210<br>BY: Glen L. Porter, Esq.<br>FOR: Great Northwoods, LLC, Wagner Forest<br>Management, LTD & North Maine Woods, Inc.<br>McDonald Investment, Inc. |
| | PIERCE ATWOOD<br>ONE MONUMENT SQUARE, PORTLAND, ME 04101<br>BY: Peter W. Culley, Esq & Ann M. St.Peter-Grifftl<br>FOR: Great Northern Paper & Timber Holdings |

| Date of Entry | |
|---|---|
| 5/31/00 | Complaint for Declaratory Judgment, Breach of Contract and Equitable Relief filed (Exhibit A attached) |
| 5/31/00 | Case File Notice Postcard forwarded to Plaintiff's counsel. |
| 6/7/00 | Officer's Return of Service as to Party-in-Interest North Maine Woods, Inc. filed. (s.d. 6/1/00 by Albro Cowperthwaite, Jr., Registered Agent) |
| 6/7/00 | Officer's Return of Service as to Defendant Great Northern Paper, Inc. filed. (s.d. 6/2/00 by C.T. William Richardson) |
| 6/7/00 | Officer's Return of Service as to Party-in-Interest Great Northwoods, LLC filed. (s.d. 6/2/00 by C.T. William Richardson) |
| 6/8/00 | Officer's Return of Service as to Party-in-Interest Rich Timber Holdings, LLC filed. (s.d. 6/2/00) |
| 6/9/00 | Officer's Return of Service as to Party-in-Interest Wagner Forest Management LTD filed. (s.d. 6/6/00 by Frank Underskifler, Esq.) |
| 6/13/00 | Amended Complaint for Declaratory Judgment, Breach of Contract, and Equitable Relief filed by Plaintiffs. |
| 6/21/00 | Motion for Enlargement of Defendant Great Northwoods LLC and Parties-in-interest Wagner Forest Management, LTD and North Maine Woods, Inc. filed. |
| 6/23/00 | Upon Motion for Enlargement of Defendant Great Northwoods LLC and Parties-in-Interest Wagner Forest Management, LTD. and North Maine Woods, Inc., Order filed. Motion GRANTED. Responsive pleadings for Great North-Woods, Inc., Wagner Forest Management and North Maine Woods due 20 days from date of acceptance of service. (Hjelm, J) Copy forwarded to attorneys of record. |

-OVER-