**Norma OUELLETTE**

v.

**Rodrique ALBERT.**

Supreme Judicial Court of Maine.

Argued June 3, 1993.

Decided July 22, 1993.

James E. Mitchell (orally), Jim Mitchell & Jed Davis, Augusta, for plaintiff.

Jonathan W. Sprague (orally), Stevens, Engels, Bishop & Sprague, Presque Isle, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

WATHEN, Chief Justice.

Plaintiff Norma Ouellette, a parent and next friend of minor Tracy Ouellette, appeals from a judgment of the Superior Court (Aroostook County, *Pierson, J.*) finding that the medical care rendered by defendant Rodrique Albert to Tracy was consistent with the appropriate standard of care and was not a substantial factor in causing or worsening her illnesses. Plaintiff contends that the court erred in determining the appropriate standard of care and misapprehended the testimony, and plaintiff also claims other procedural and evidentiary errors. We affirm the judgment.

■ Tracy Ouellette, who was born in 1977, was treated by defendant, a pediatrician, in 1981 and 1982 for a variety of ailments. Only after Tracy underwent two CAT scans when she was hospitalized at Maine Medical Center in January 1983 because of a febrile illness, involving seizures, did doctors discover that Tracy had been born with a craniopharyngioma, a tumor in the brain. The tumor was removed several months later. Plaintiff brought this action claiming that defendant provided negligent care to Tracy that allowed her tumor to go undetected, resulting in permanent physical and mental retardation and causing Tracy pain and suffering. The parties waived a jury trial.

The relevant evidence may be summarized as follows: Defendant first treated Tracy in June of 1981, when he examined her prior to her participation in the Head Start program. He found her abnormal only in the respect that she was uncooperative and difficult. She was wearing glass-

es that had been prescribed as a result of a referral by her family doctor to an optometrist for a lazy eye. Defendant saw Tracy on a number of occasions during the next 18 months for treatment of specific symptoms. He treated her for a throat infection and bronchitis; for apparent weakness of the eye and sporadic headaches; for hyperactivity; for slight anemia; again for bronchitis; and for pin worms and hyperactivity.

Height and weight measurements of Tracy were taken by the Head Start program in March of 1981. Measurements taken by Head Start again in February 1982 revealed that she had grown one-half inch and gained one pound in the prior 11 months. Whereas the earlier measurements determined that she was in the 75th percentile of growth, she fell into the 50th percentile in the later measurement. Although defendant knew of these measurements, defendant did not measure Tracy's height and weight during her other visits to him.

In the fall of 1982, defendant received a report prepared more than a year earlier by a speech pathologist noting the child's hoarseness and hyperactivity and questioning whether a neurologist should be consulted as to the hyperactivity. Dr. George Hallett, a pediatrician who was defendant's expert witness, testified that a neurological consultation would not be the initial response to the hyperactivity concern expressed by the speech pathologist. Tracy also did not exhibit the lethargy that one would expect as a symptom of a brain tumor. The lazy eye from which Tracy suffered was corrected to some extent by eyeglasses, a result that would not have occurred if the lazy eye was caused by a brain tumor. Dr. John Malmstrom, a pediatric neurologist who was an expert witness for plaintiff, testified that the eye symptoms probably were not related to the tumor.

The court found that the appropriate standard of care under the circumstances did not include periodic height and weight measurements, that defendant's medical care was not substandard, that the care

provided by defendant did not cause a delay in diagnosing Tracy's craniopharyngioma and did not worsen her febrile illness, and that his care was not a substantial factor in the harm Tracy is alleged to have suffered. The court entered judgment in favor of defendant.

Plaintiff argues that the court erred in finding that defendant did not commit malpractice because the court unjustifiably fashioned an "episodic care" exception to the standard of care. We review for error of law.

■ Plaintiff has the burden of establishing the appropriate standard of medical care, showing the defendant's deviation from that recognized standard, and showing that the conduct in violation of that standard was the proximate cause of Tracy's injuries. *Ouellette v. Mehalic*, 534 A.2d 1331, 1332 (Me.1988). The court found that defendant provided care to Tracy that was episodic, that routine height and weight measurements are not normally taken in episodic care, and that "under the totality of the circumstances as revealed by the evidence, Dr. Albert's care was not substandard...." Episodic care refers to care provided a patient who seeks medical attention only for treatment of acute symptoms in contrast to more comprehensive health care maintenance.

The court's determination of the appropriate standard of care considered the circumstances in which the care was provided. *See Roberts v. Tardif*, 417 A.2d 444, 452 (Me.1980) (providing that the appropriate standard of care, measured by national standards, may be determined in reference to the practitioner's obligation under all the circumstances). The circumstance here was that Tracy's parent sought treatment for her from defendant after her initial physical only for specific acute symptoms, and the court heard expert testimony that height and weight measurements normally would not be taken on such visits. We find no error by the court in its determination of the appropriate standard of care on these facts.

Plaintiff also contends that the court clearly erred by misapprehending the testimony of two witnesses. Plaintiff first argues that the court erred when it concluded that Dr. George Hallett, defendant's expert witness, testified that the care rendered by defendant was not substandard. A court clearly errs if it bases a finding of fact upon a clear misapprehension of the meaning of the evidence. *Application of Spurling*, 595 A.2d 1062, 1065 (Me.1991); M.R.Civ.P. 52(a). Dr. Hallett testified that, had he known only the facts that defendant knew, there was nothing that he would have done differently from defendant in treating Tracy that would have led to a significantly earlier diagnosis for craniopharyngioma. He also testified that standard medical care provided by a subspecialist would not have led to the diagnosis of craniopharyngioma and that additional testing would have been "overkill." The court's finding is supported by the evidence and does not result from a misapprehension of the testimony of Dr. Hallett.

Plaintiff next argues that the court misapprehended the testimony of defendant as saying that his care of Tracy did not cause or worsen her febrile illness nor worsen her craniopharyngioma. Although defendant did not explicitly make such a statement, his testimony can be reasonably construed to that effect. Basically, he testified that Tracy's symptoms did not provide reason pursuant to the applicable standard of care to refer Tracy to a neurologist or to suspect her real condition. More specifically, defendant testified that he would not routinely measure the height and weight of his patients that came to him only for care in acute circumstances. The court committed no error.

Plaintiff's remaining arguments are without merit and require no discussion.

The entry is:

Judgment affirmed.

All concurring.