### Richard L. RHODA

v.

### Albert FITZPATRICK, et al.

Supreme Judicial Court of Maine.

Submitted on Briefs Jan. 27, 1995.

Decided March 8, 1995.

Richard Rhoda, Houlton, for plaintiff.

Robert F. Ward, Houlton, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

LIPEZ, Justice.

Richard Rhoda appeals from a judgment entered in the Superior Court (Aroostook County, *Pierson, J.*) following a nonjury trial on Rhoda's complaint seeking the declaration of a right of access over the so-called Dykeman Road in Houlton, injunctive relief, damages and costs and on the Fitzpatrick's counterclaim to quiet title and for costs. Rhoda argues that the court erred in locating the Dykeman Road; that it mistakenly excluded from evidence statements made by a deceased predecessor in the Fitzpatrick's chain

of title; that it wrongly decided the estoppel issue; and that the court erred in adopting verbatim the Fitzpatrick's proposed findings of fact and conclusions of law. We disagree and affirm the judgment.

## Background

The evidence disclosed that in 1892 George Pennington owned Lots 16 and 17, Range 3, in the North Division of Houlton. Lot 17 was located to the south of lot 16. Wallace Dykeman, Jr. owned Lot 16, Range 2 in the North Division of Houlton. Lot 16, Range 2 was located to the east of Lot 16, Range 3. (The attachment appended hereto prepared by the Court illustrates the location of the lots in relation to one another.)

The County Commissioners decided to locate a public road over Pennington's land, described as follows:

the bearings being according to the compass, the variation being on the first day of January, 1892, at Houlton, nineteen (19) degrees and seventeen (17) minutes west. Beginning in the town of Houlton at a point bearing north and distant 24 and ¾ feet from *where the line of Lot No. 16 range 3 intersects the Foxcroft road* in said Houlton thence running easterly along and 24 and ¾ feet distant from said south line of Lot 16, range 3, and on said lot 47½ chains to a point 24 and ¾ feet north from the south-east corner of Lot 16, range 3. *The above line to be the center of the road and the road to be three rods wide,* and to be made and opened within one year from the final close of proceedings.

(emphasis added). They agreed to pay Pennington $100.00 in damages for the taking. In 1897 Pennington deeded land for the road to the town in exchange for $100.00. The deed description states:

a strip or parcel of land situate in said Houlton, to wit: *three (3) rods off the South side of Lot numbered sixteen* (16) in the North Division of said Houlton, the same to be used as a town road....

(emphasis added). Pennington thereafter remained the owner of the rest of Lot 16, Range 3, as well as Lot 17, Range 3. The land that Dykeman had owned, Lot 16, Range 2, had been conveyed to William A. Campbell.

Both Pennington and Dykeman were predecessors in title to land the Fitzpatricks currently own: Lots 16 and 17, Range 3 and Lot 16, Range 2. Rhoda currently owns, among other parcels, Lot 17, Range 2. He sold two parcels of his land believing that an existing road over Lot 16, Range 3 (the Dykeman Road) would provide access from the Foxcroft Road. In the fall of 1988, however, the Fitzpatricks dug up the eastern portion of the road and ran a steel cable across it, making it impassable.

Rhoda brought an action in 1989 for a declaratory judgment that he had a right of access over the Dykeman Road.[1] He also sought injunctive relief, damages and costs. His complaint was amended in 1991 to include claims of easement by prescription, necessity or by implication, as well as damages pursuant to 14 M.R.S.A. § 7552 for knowing and willful conduct in blocking his use of the road. The Fitzpatricks counterclaimed to quiet title and to recover costs.

After the entry of a judgment in favor of the Fitzpatricks on Rhoda's complaint, their counterclaim and for costs, Rhoda filed a motion for findings of fact and conclusions of law pursuant to M.R.Civ.P. 52(a). Both parties filed proposed findings with the court, which issued findings of fact and conclusions of law, later amended. This appeal followed.

## Location of the Dykeman Road

■ Rhoda contends that the trial court erred in determining that the Dykeman Road lies entirely within Lot 16, Range 3 and touches Rhoda's property (Lot 17, Range 2) at only one finite point. In boundary disputes, what the boundaries are is a question of law. Where the boundaries are on the face of the earth is a question of fact. *Du-*

1. Rhoda appears to have two theories in support of his right of access over the Dykeman Road. One depends on the assertion that the road begins at the easterly right of way margin of the Foxcroft Road, thereby extending 35.56' into Lot 16, Range 2 and providing him access from his land, Lot 17, Range 2. The other theory appears to be that the road actually lay partly on Lot 17, Range 3, formerly owned by Fred Dow, and partly on Lot 17, Range 2, Rhoda's land.

*pont v. Randall,* 648 A.2d 437, 438 (Me.1994). The finding of a trial court on the location of boundary lines will not be disturbed unless clearly erroneous. *Blance v. Alley,* 330 A.2d 796, 799 (Me.1975). A trial court's factual determinations are only "clearly erroneous" if there is no credible evidence on the record to support them, *Hamm v. Hamm,* 584 A.2d 59, 62 (Me.1990), or if the court bases its findings of fact upon a clear misapprehension of the meaning of the evidence, *Ouellette v. Albert,* 628 A.2d 1027, 1029 (Me.1993). These principles apply to the court's decision on the location of the Dykeman Road. There is ample credible evidence on the record to support the court's decision.

The unambiguous descriptions in both the 1892 County Commissioner's order and the subsequent deed from Pennington indicate that the road is located entirely on Lot 16, Range 3.[2] Fred Rooney, the Fitzpatricks' surveyor, researched the history of surveys of the area back to 1794, including a plan known as the Burleigh Plan prepared sometime between 1817 and 1842. Computer analysis revealed that the plan reflected surveying activity on the face of the earth. After Rooney conducted a survey of Lots 17 and 16, Range 3, and Lots 16 and 15, Range 2, he found a good correlation in terms of angles between the Burleigh Plan and his survey. Although in his survey he consistently found surplus distances in the length of property lines compared to the distances in the Burleigh Plan, he was able to locate old blazes consistent with the Plan. Rooney explained that the Plan was only measured to the nearest rod, which accounts for some of the surplusage. His survey of the entire area closed with an accuracy far exceeding the standard for rural property.

Rooney also used aerial photographs to locate the Dykeman Road, transferring the results of his survey onto several photographs so that the location of the Dykeman Road in relation to the boundaries of the property of the parties is clear. According to the survey and photographs, the road lies entirely on Lot 16, Range 3. Finally, the historical testimony of witnesses who had lived in the area for a long time supports the finding of the court on the location of the Dykeman Road.

### The Meaning of "Intersect"

Rhoda contends that the Dykeman Road actually extends 36.56 feet into Lot 16, Range 2 because the word "intersect" in the County Commissioners' order means the junction of the western boundary of Lot 16 Range 3 with the easterly right of way margin of the Foxcroft Road, rather than a junction at the center of the Foxcroft Road. The trial court disagreed with that construction.

In interpreting a deed, a court should give words their general and ordinary meaning to see if they create any ambiguity. *Gillespie v. Worcester,* 322 A.2d 93, 95 (Me. 1974). If the words create no doubt, the deed is clear and unambiguous. *Id.* "Intersection" is commonly defined as "to pierce or divide by passing through...." WEBSTER'S DICTIONARY 1299 (2d ed. 1961). It has been interpreted as meaning "to cut across" or "to cut into another." *Beams v. Werth,* 200 Kan. 532, 438 P.2d 957, 965 (1968). *See also Boxell v. Planning Comm'n of City of Maumee,* 10 Ohio App.2d 25, 225 N.E.2d 610, 619 (1967) (defining "intersect" as "to cut into or between; to pierce or divide by passing through or across; to meet and cross at a point; to cut into another"). The foregoing definitions indicate that the Dykeman Road should be measured from the centerline of the Foxcroft Road. If the Dykeman Road were measured from the eastern margin of the Foxcroft Road, it would not pierce, cut or cross the road.

This meaning of "intersect" is consistent with the length of the road described in the order of the County Commissioners—a road 47½ chains long or the equivalent of 3,135 feet. When Rooney measured the length of

---

2. The descriptions in the Pennington deed and the order of the County Commissioners are consistent with one another. The County Commissioners laid the road out so that its centerline would be 24¾ feet from the south line of Lot 16, Range 3. Therefore, the total width of the road is 2 × 24¾ feet, or 49½ feet wide. Since a rod is 16½ feet, the road would be 3 rods wide. Pennington's deed, which conveys 3 rods off the south side of the lot, is entirely consistent with this description.

the road as surveyed, from the centerline of the Foxcroft Road to the eastern boundary of Lot 16, Range 3, the distance was 3,131.44 feet. The difference between the road as it lies on the earth and as described by the County Commissioners is only 3.56 feet.

It would also be inconsistent with the language of the Commissioners' order, which indicates that the terminus of the Dykeman Road is the southeast corner of Lot 16, Range 3, and the Pennington deed to the town, which indicates that the road is to lie along the south three rods of Lot 16, Range 3, to interpret the word "intersect" in such a way that the road would extend into Lot 16, Range 2.

### Excluded Statements

■ At trial, Rhoda sought to introduce statements made to him by Fred Dow, a deceased adjacent property owner, about the location of the Dykeman Road[3], pursuant to M.R.Evid. 804(a)(4)[4] and (b)(3).[5] When counsel for the Fitzpatricks objected to the hearsay testimony, the court took the objection under advisement, allowing Rhoda to continue his testimony. Moments later the court sustained a renewed hearsay objection, admitting Rhoda's testimony about Dow's statements only to show Rhoda's state of mind and excluding it for the truth of the matter asserted (that truth being the location of the Dykeman Road). Assuming, without deciding, that the court erred in excluding Rhoda's testimony for the truth of the matter asserted, it was harmless error given the

ample evidence on the location of the Dykeman Road. M.R.Civ.P. 61.

### Estoppel

■ To the extent that any statements by Dow were admitted to show Rhoda's state of mind, they worked no estoppel against the Fitzpatricks as privies of Dow. The Fitzpatricks would be bound by an estoppel against Dow only if they had notice of the facts from which the estoppel arose at the time of the grant to them by Dow. 28 AM. JUR.2D *Estoppel and Waiver* § 117 (1966). There is no indication that the Fitzpatricks had knowledge of any representations on Dow's part; thus, they would not be bound by any estoppel against him.[6]

### Findings of Fact and Conclusions of Law

■ We disagree with Rhoda's contention that the trial court erred in adopting verbatim the findings of fact and conclusions of law proffered by the Fitzpatricks. It is not automatic error for a trial court to adopt findings proposed by counsel. *In re Sabrina M.,* 460 A.2d 1009 (Me.1983). However, this Court must scrutinize such findings to determine if the trial court adequately performed its judicial function. *Weeks v. Weeks,* 650 A.2d 945, 946 (Me.1994). We review for clear error. M.R.Civ.P. 52(a).

The court supplemented the findings which it adopted verbatim with two additional findings. A dispute over the location of a road does not lend itself to the array of possible

---

3. According to Rhoda, Dow told him at various times that the road ran across Dow's land and that it was partly on Rhoda's property.

4. M.R.Evid. 804(a)(4) states in pertinent part: **(a) Definition of Unavailability.** "Unavailability as a witness" includes situations in which the declarant:
   (4) is unable to be present or to testify at the hearing because of death....

5. M.R.Evid. 804(b)(3) states in relevant part:
   (3) *Statement Against Interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability ... that a reasonable man in his position would not have made the statement unless he believed it to be true.

6. There was testimony from Rhoda that, at one time, he represented a party who had a contract with Fitzpatrick to buy Lot 15, Range 2. According to Rhoda, Fitzpatrick suggested that Rhoda speak with Dow about getting a right of way into the lot over a field road Dow owned. The context of Rhoda's testimony suggests that he is referring to the field road over Dow's land on Lot 17, Range 3 which Rhoda theorizes is the Dykeman Road. Arguably, then, there is some testimony to the effect that the Fitzpatricks knew the Dykeman Road lay on Dow's land, Lot 17, Range 3. Fitzpatrick, however, stated at trial that the discussion related to a right of way over Dow's land on Lot 16, Range 2, not Lot 17, Range 3. Whatever the reference, this scant testimony does not support an estoppel claim against the Fitzpatricks.

findings characteristic of other types of actions. The court adequately performed its judicial function. We find no clear error.

Rhoda's remaining contentions are without merit.

The entry is:

Judgment affirmed.

All concurring.