STATE OF MAINE  SUPERIOR COURT
CUMBERLAND, ss. CIVIL ACTION
DOCKET NO. RE-07-077

WINDHAM LAND TRUST,

        Plaintiff

                              ORDER ON PLAINTIFF'S
v.                            MOTION FOR
                            PRELIMINARY INJUNCTION

RUSSELL I. JEFFORDS, ET AL,

        Defendants

This matter is before the court on the motion of the plaintiff Windham Land

Trust for a preliminary injunction to enjoin certain activities by the defendants

Russell Jeffords and Sue Poulin on land owned by them in Gray, Maine.

## BACKGROUND

In 2003, the Estate of George L. Freeman, Jr. owned a 100 acre parcel of

land on Route 202 in Gray, known as the Freeman Farm ("Farm Property"). On

August 22, 2003 the estate granted a perpetual conservation easement to the

plaintiff on the rear 85 acre portion of the Farm Property ("Easement Parcel").[1]

The remaining 15 acre front portion of the Farm Property, which includes a house

---

[1] The text of the easement deed was the collaborative product of the attorneys for both the estate
and the plaintiff.

1

and outbuildings, was not subject to the easement ("Front Parcel"). The estate then conveyed the fee interest in the entire Farm Property to Michael and Marjorie Major, subject to the conservation easement.

In June 2004, the Majors conveyed the Farm Property to the defendants, subject to the easement. After purchasing the property, the defendants discovered a significant amount of tree cutting and slash within the Easement Parcel and undertook to clean the area and remove fallen trees and debris. The defendants also did renovation work to improve the buildings on the Front Parcel.

Since 2004, the defendants have organized and conducted two music festivals on the Front Parcel, and have permitted festival patrons to hike on logging trails and take hay rides and sleigh rides on the Easement Parcel. The defendants have donated most of the festival proceeds to charities and have earned some income from the endeavor. They intend to carry out similar activities during music festivals scheduled for the periods of July 6-8, 2007 and August 10-12, 2007, and hope to attract approximately 1,000 people during each period. They also intend to allow festival patrons to camp overnight on a twenty-acre area adjacent to the Front Parcel, but located entirely within the Easement Parcel. They do not intend to charge those patrons for using the camp site.

The defendants have advertised the upcoming music festivals in publications, such as flyers and internet postings, and on the radio. One such ad

2

invites the public to enjoy the Farm Property's 100 acres and to participate in year-round in skiing, sleigh and horse-drawn carriage rides, and hiking. Plaintiff's Exh. 7. According to the defendant Russell Jeffords, festival patrons will have access to all 100 acres of the Farm Property and campers will be allowed to bring their pets and have campfires, portable toilets will be placed in the camp site and a twenty-person security staff will patrol the area.

Mr. Jeffords also testified to the defendants' long-term goal of establishing a "wilderness campground" on the Easement Parcel offering ski and snow-shoe trails, sleigh rides, hay rides and other activities for the campgrounds patrons. To this end, the defendants have obtained a permit from the State of Maine for 36 tent and trailer camp sites to be located within the above-mentioned twenty-acre area of the Easement Parcel.

The plaintiff seeks to enjoin all of the foregoing actual and planned activities on the Easement Parcel.

## STANDARD OF REVIEW

In order to succeed on a motion for a temporary restraining order, a moving party has the burden of demonstrating "(1) that plaintiff will suffer irreparable injury if the injunction is not granted, (2) that such injury outweighs any harm which granting the injunctive relief would inflict on the defendant, (3) that plaintiff has exhibited a likelihood of success on the merits (at most, a probability; at least,

3

a substantial possibility), (4) that the public interest will not be adversely affected by granting the injunction." *Ingraham v. University of Maine*, 441 A.2d 691, 693 (Me. 1982). These four criteria, however, "are not to be applied woodenly or in isolation from each other; rather, the court of equity should weigh all of these factors together in determining whether injunctive relief is proper." *Dep't of Envtl. Prot. v. Emerson*, 563 A.2d 762, 768 (Me. 1989). For example, if the evidence of success on the merits is strong, the showing of irreparable harm may be subject to less stringent requirements. *Id.*

## DISCUSSION

### A. Likelihood of Success

As an initial matter, there is no support on this motion record for the plaintiff's claim that the defendants have widened paths and trails or otherwise caused damage within the Easement Parcel to accommodate a tractor or a horse-drawn wagon for hay rides and sleigh rides. The evidence is that the defendants merely removed fallen trees, slash and brush and did work to maintain the existing woods roads, all in a manner consistent with the conservation easement.

The issue bearing on the plaintiff's likelihood of success is whether the defendants' use and intended uses of the easement area, particularly by music festival patrons, constitute permissible "residential recreational purposes".

4

1.    The Conservation Easement Deed

The focus of this injunction proceeding is whether or to what extent the defendants' activities and intended activities on the Easement Parcel are permitted by the conservation easement deed. To make this assessment, the language of the easement deed must be applied to the facts found in this case. Of necessity, this requires the court to interpret that document.

When interpreting a deed, its words "are given their general and ordinary meaning to see if they create an ambiguity." *ALC Development Corp. v. Walker*, 2002 ME 11, ¶ 8, 787 A.2d 770. "If the terms of the deed are unambiguous, then the language determines the parties' intent; however, if the terms are ambiguous, the court may look to extrinsic evidence for guidance." *Id.* The plaintiff asserts that the terms of the deed are not ambiguous. The defendants assert that they are.

Relevant to the context of this dispute, the easement deed expressly provides that the Easement Parcel "shall be used by Grantor only for residential recreational purposes." Plaintiff's Exh. 1 at ¶ 3. Although the phrase "residential recreational purposes" is not expressly defined in the deed, it is not ambiguous and its meaning can be discerned by giving those words their general and ordinary meaning. *Sylvan Props. Co. v. State Planning Office*, 1998 ME 106, ¶ 8, 711 A.2d 138 (citing *Rhoda v. Fitzpatrick*, 655 A.2d 357, 360 (Me. 1995) (using *Webster's*

5

*Dictionary* and case law to interpret the term "intersection"). In isolation, those

words have the following meanings:

> Recreational means "any form of play, amusement, or relaxation used for this purpose, as games, sports, or hobbies." WEBSTER'S NEW WORLD COLLEGIATE DICTIONARY 1198 (4th ed. 2002).
>
> Residential means "of or connected with a residence; of, or characterized by, or suitable for residences or homes; chiefly for residents, rather than transients." *Id.* at 1219.

As used in the latter definition,

> A resident is "a person who lives in a place, as distinguished from a visitor or transient." *Id.*;
>
> A residence is a "place in which a person resides; dwelling place, abode; esp., a house. *Id.*;
>
> To reside means "to dwell for a long time." *Id.*; and
>
> Transients are persons "staying only for a short time (*the transient population at resorts*). A transient person (*transients at a hotel*)." *Id.* at 1520.

Using those definitions in combination, "residential recreational purpose" means

any form of play, amusement, or related relaxation, such as games, sports, or

hobbies, that is chiefly for residents (persons who live in a place), rather than

transients (persons who stay only for a short time), or that is connected with a

residence (the place where a person dwells for a long time), or that is characterized

by, or suitable for residences or homes. In the context of this definition,

6

commercial activities, such as music festivals and campgrounds, are not residential in nature.

While this definition prescribes the type of uses allowed on the Easement Parcel, other language in the easement deed serves to prescribe who may engage in those uses. Section 1 describes the purpose of the conservation easement as follows:

> It is the dominant purpose of this Conservation Easement to preserve and protect in perpetuity the natural, open space, scenic, aesthetic and ecological features and values of the [Easement Parcel] while not limiting Grantor's power to utilize the property for residential recreational purposes. In so doing, it is the purpose of this Easement to foster responsible conservation practices *while permitting Grantor to engage in certain recreational uses on the* [Easement Parcel].

Plaintiff's Exh. 1 (emphasis added). In keeping with this purpose, Section 3 provides that the Easement Area "shall be *used by the Grantor* only for residential recreational purposes, and maintenance or access relating to such purposes, together with conservation purposes and for the proper management of its forest resources." *Id.* (emphasis added). Section 3 also reserves to the fee owner "the right to the recreational use and general enjoyment and the right to maintain and occupy the [Easement Parcel], and all other uses consistent with the terms of this easement." *Id.* It also provides that mobile homes and motorized vehicles, which includes, "without limitation, motorcycles, snowmobiles, all terrain vehicles, and tractors" are prohibited on the Easement Parcel

except in an emergency; provided, however, Grantor shall be allowed the use of motorized vehicles *by Grantor and Grantor's guests*, up to but not exceeding five in number at any one time. [Section 3 also prohibits] filling (except for forest management), dumping, alteration or excavation [] other than that caused by [] Grantor related to Grantor's recreational uses

and Section 3 expressly reserves and retains to the fee owner of the Farm Property

the right of recreational use and general enjoyment, and the right to maintain and occupy the [Easement Parcel], and all other uses consistent with the terms of this easement; [but prohibits] any clear cutting or large scale removal of timber or wood resources, except such as is reasonably necessary for construction of access roads for uses permitted hereunder[.]

*Id.* (emphasis added). Finally, Section 10 makes clear that

[w]henever the term "Grantor" appears in the Conservation Easement, including the foregoing covenants, it shall also refer, as appropriate, to any transferee, assignee or successor in interest of the Grantor of this Conservation Easement.

Based upon the foregoing, the court concludes that the unambiguous language of the easement deed is intended to restrict permitted residential recreational activities on the Easement Parcel to the fee owners of the Farm Property and to their guests,[2] and the court further concludes that the easement deed prohibits any collateral use of the Easement Parcel, recreational or otherwise, by patrons or attendees of permitted commercial activities on the Front Parcel.

---

[2] Section 3 of the deed makes reference to the permitted "use of motorized vehicles by Grantor and Grantor's guests.

8

The court does not accept the defendant's argument that the easement deed allows more than merely "residential recreational uses" based on language in section 3 that expressly reserves to them the rights of "recreational use[s] and general enjoyment". Any broader use of the property that might be suggested by the latter phrase is tempered by the abundant references to the more restrictive "residential recreational purposes" throughout the easement deed. Nor does the court accept the defendants' additional argument that, even if only residential recreational uses are permitted on the Easement Parcel, their proposed campground, hay rides, sleigh rides and other activities for patrons of the music festivals are all within the meaning of that term. The defendant's view of "residential recreational purposes" focuses on the recreational *nature* of the activities, which the defendants assert includes camping, campgrounds, hiking, wagon rides, and the like, by anyone, including patrons of their music festivals. However, the court has contrarily concluded that scope of the recreational activities permitted on the easement area is limited by a requirement that the activities must be suitable for a residential use of the property and be chiefly for the residents of the Farm Property and their guests.

2. Overburdening of the Easement

The plaintiff also argues that collateral activities by festival patrons on the Easement Parcel, including the festivals planned for July 6-8 and August 10-12,

9

will likely involve large numbers of people, thereby overburdening the easement, and they should be preliminarily enjoined. An easement is overburdened when its present use changes from past practices and the change produces some greater independent burden on the servient estate that unreasonably or unforseeably interferes with the landowners enjoyment. *Taylor v. Nutter*, 687 A.2d 632, 635 (Me., 1996).

The starting point in this analysis is determining the use of the property at the time the conservation easement was created. That point was specifically referenced in section 6 (Baseline Data) of the easement deed,

> Holder (plaintiff-Trust) acknowledges by acceptance of this easement that Grantor's historical and present use of the [Easement Parcel] and the anticipated future residential recreational use described herein is compatible with the purposes of this Easement.

Plaintiff's Exh. 1. Although the motion record and testimony shed dim light on what the "historical and present" uses of the easement area were, the preamble to the easement deed provides some illumination.

> WHEREAS, the [Easement Parcel] is to remain (except as provided herein) in an undeveloped, open and natural state, recognizing its scenic, aesthetic, scientific and ecological value in providing a place of recreateion and of natural solitude; it is the purpose of the Grantor and Holder to assure the protection and conservation of the [Easement Parcel] and for assuring the continuation of a viable forest, while at the same time not precluding its use for recreation in a manner which does not substantially diminish its protection and conservation[.]

10

There is enough record evidence to conclude that the uses and intended uses of the Easement Parcel as a campground or in conjunction with music festivals or other public-at-large activities are a change from the manner in which that area was used at the time the conservation easement was created, and are inconsistent with the manner it was expected to be used under the terms of the easement deed. Finally, it is reasonable to expect that these changed and expanded uses are likely to produce some greater independent burden on the Easement Parcel that will unreasonably or unforeseeably interfere with the purposes of the easement.

Based upon the foregoing, the court concludes that the plaintiff has made a strong showing of a likelihood of success on the merits.

B.    Irreparable Harm

The court also finds that the plaintiff has demonstrated that it will suffer irreparable injury if the injunction is not granted and the defendants are permitted to go ahead with their plans. Although the record is somewhat sparse on this issue, it is sufficient to establish that the defendants' use and intended uses of the Easement Parcel will disturb the condition and natural environment of the easement area in such a way that it would take many years to return the land it to its current state. *Dep't of Envtl. Prot. v. Emerson*, 563 A.2d 762, 768 (Me. 1989) (if the evidence of success on the merits is strong, a showing of irreparable harm may be subject to less stringent requirements).

11

C.   Balancing of Harms

The court is not persuaded by the defendants argument that any harm to the property caused by their activities is outweighed by the harm that they will suffer if a preliminary injunction is granted because it will interfere with their property rights and cause them to suffer economic loss through interruption of their music festivals.   As the court has already concluded, they have no right to conduct collateral activities on the Easement Parcel in conjunction with their commercial or public endeavors.   As for any economic loss, the music festivals take place entirely on the Front Parcel, which is not enjoined.   Thus, an order prohibiting festival patrons from venturing onto the easement area will not prevent and should not impact that core activity.   And, finally, any impact and resulting harm would not outweigh the long-term damage that likely would be done by allowing such activity within the easement.

D.   Public Interest

The motion record does not disclose any reason to believe that the public interest would be adversely affected by the issuance of a temporary restraining order.

DECISION

Accordingly, based upon the foregoing, it is ORDERED AND DECREED, as follows:

12

A.     The defendants Russell I. Jeffords and Sue A. Poulin are enjoined and restrained, directly or indirectly, whether alone or in concert with others, from permitting, soliciting, encouraging or allowing others to go upon and use the Easement Parcel

(1)     For any commercial activities or other activities on the Easement Parcel to which the public-at-large or any segment of the public-at-large is invited, including, but not limited to, a campground, camping, hiking, skiing, hay or wagon rides, sleigh rides; or

(2)     In conjunction with or collateral to any commercial activities or other activities on the Front Parcel to which the public-at-large or any segment of the public-at-large is invited, including, but not limited to, music festivals.

B.     This preliminary injunction does not apply to residential guests of the defendants – meaning, persons who are family members or social invitees of the defendants – for the duration of their visit with the defendants.

C.     This preliminary injunction does not limit lawful and permissible commercial activities or other activities to which the public-at-large or any segment of the public-at-large is invited that are conducted solely on and within the confines and bounds of the Front Parcel, including, but not limited to, music festivals; provided, however, the defendants shall not permit, solicit, encourage or allow any person who is on the Front Parcel for any purpose related to such

13

activities to go upon or enter the Easement Parcel, and the defendants shall take and implement reasonable measures and precautions to prevent any such person from going upon or entering the Easement Parcel.

D.    This preliminary injunction shall remain in full force and effect until the issuance of a final judgment or an earlier order of the court.

E.    On this record, the court cannot conclude that there is a likelihood that the plaintiff will be liable for costs or damages incurred or suffered by the defendants, or either of them, as a result of being wrongfully enjoined or restrained herein, but the court does conclude that there is good cause, including the plaintiff's likelihood of success on the merits, for waiving the requirement that the plaintiff give security pursuant to M.R. Civ. P. 65(c).

Pursuant to M.R. Civ. P. 79(a), the Clerk is directed to enter this Order On Plaintiff's Motion for Preliminary Injunction in the Civil Docket by a notation incorporating it by reference.

Dated:  June 29, 2007

_____
Justice, Superior Court

14

Marcia Corradini, Esq. ⎫
Michael Nelson, Esq. ⎬ PHL
Christopher Neagle, Esq.  O.J.
David Dunlavey, Esq. PII
Bank of America

STATE OF MAINE                                          SUPERIOR COURT
CUMBERLAND, ss.                                         CIVIL ACTION
                                                        DOCKET NO: RE-07-077

WINDHAM LAND TRUST,

                    Plaintiff,

STATE OF MAINE,

                    Intervenor/Plaintiff,

                                        **ORDER**

          v.

RUSSELL I. JEFFORDS,
and
SUSAN A. POULIN,

                    Defendants.


Before this Court are various motions, including Defendants Russell I.

Jeffords and Sue A. Poulin's (collectively "Defendants") Motion to Dismiss and

Motion to Vacate two orders and Plaintiff Windham Land Trust (WLT) and

Intervener Plaintiff State of Maine's (State) (collectively "Plaintiffs") Motion for

Summary Judgment pursuant to M.R. Civ. P. 56.

## BACKGROUND

In 2004, Defendants purchased one hundred acres of land located in Gray,

Maine. Eighty-five acres of the land is subject to a conservation easement

(Easement Parcel) created in 2003 and held by WLT. The easement contains a

mandatory notice and mediation clause.[1] Defendants planned to allow

---

[1] The Conservation Easement states in pertinent part:

> If Holder shall determine that a violation of this easement exists, Holder
> shall provide written notice of same to Grantor and Grantor shall have
> thirty (30) days in which to cure such violation.

1

wilderness camping on previously cleared property, as well as wagon rides, sleigh rides, and nordic skiing on existing logging roads.

The WLT became aware of Defendants' plans and expressed their concerns. The concerned violations were set forth in an August 2006 letter to Defendants. It is undisputed that no mediation occurred prior to the filing of this lawsuit. The reasons for the failure are disputed, however Plaintiffs provide a letter requesting mediation between the parties, by reference to the Conservation Easement, dated November 1, 2006 and a reply letter from Defendants dated November 3, 2006 indicating that they were not ready to mediate. Defendants assert that in February 2007, they requested mediation, but the WLT declined.

In March 2007, WLT filed the instant suit and requested a preliminary injunction. After a June 26, 2007 testimonial hearing before Chief Justice Humphrey, the injunction was granted (Injunction Order). A motion to reconsider the Injunction Order was denied on July 12, 2007.

In November, 2007 the State filed a motion to intervene pursuant to 5 M.R.S.A. § 194 and 33 M.R.S.A. § 478, which was granted over Defendants' objection on January 2, 2008. Prior to intervener status being granted to the State, the WLT and Defendants engaged in a Rule 16B mediation over several days in December 2007 and January 2008. The State participated in those sessions by agreement of Defendants. Attempts at mediation failed.

---

Prior to commencing any court or administrative action regarding enforcement of this easement or any part thereof, as a precondition thereof, Holder shall be required to engage in mediation in good faith with Grantor, with a mutually acceptable mediator, or upon a failure to agree with a mediator appointed by Cumberland County Superior Court.

Pl. Ex. 1 at 4.

2

On April 10, 2008, the State served a complaint on Defendants' counsel. The State concedes the error of failing to file the complaint with the Motion to Intervene pursuant to M.R.Civ. P. 24.

## DISCUSSION

### I. Defendants' Motion to Dismiss

Defendants move to dismiss both the State's and the WLT's complaints and thus vacate any prior orders in the case, principally on the grounds that the Court had no jurisdiction over the matter because both the State and the WLT failed to mediate the matter prior to filing the lawsuit.

#### A. Standard of Review

"Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." M.R. Civ. P. 12(h)(3). When considering a motion to dismiss for subject matter jurisdiction, the court "does not draw inferences favorable to the pleader, but should consider any material outside the pleadings submitted by the pleader and the movant." *Davric Maine Corp. v. Bangor Historic Track, Inc.*, 2000 ME 102, ¶ 6, 751 A.2d 1024, 1028 (citations and quotations omitted). Dismissal for lack of subject matter jurisdiction is generally considered a dismissal not upon the merits. *See* M.R. Civ. P. 41(b)(3).

#### B. Lack of Jurisdiction

Defendants assert that the failure to mediate deprived this Court of subject matter jurisdiction. The Court disagrees. This Court has subject matter

3

jurisdiction and an alleged failure of a condition precedent in a contract between parties does not deprive the Court of jurisdiction.[2]

Moreover, considering all materials presented by the parties, as this Court should when jurisdiction is at issue, it is clear that the WLT initiated the mediation process in its November 1, 2006 letter, prior to filing the complaint. Defendants did not avail themselves of the opportunity to mediate at that time. Nor did they raise the issue prior to this Motion to Dismiss and willingly participated in the Rule 16B mediation. Accordingly, Defendants have waived their right to mediation under the Conservation Easement. *See Roberts v. Frank L. McKinney, Inc.*, 485 A.2d 647, 651(Me. 1984)*(citing Houlton Trust Co. v. Lumbert*, 136 Me. 184, 186 (1939)).

Defendants also assert that the State failed to give the appropriate notice and failed to participate in mediation under the Conservation Easement prior to filing its complaint. As stated above, such a failure would not deprive this Court of jurisdiction. Nonetheless, the State entered the action in order to enforce the conservation easement because the WLT was not financially able to do so. They, in effect, stepped into the shoes of the WLT without altering the claims of the WLT. Defendants concede that the WLT did give proper notice. It is also undisputed that the State participated in the Rule 16B mediation, which occurred prior to the State being granted intervener status.[3]

---

[2] The Court is not persuaded by the sole case proffered by Defendants in support of their contention. The case cited is an administrative law case that refers to a statutory restriction on jurisdiction. *See Me. State Employees Assoc. v. Williams*, 373 A.2d 258, 260 (Me. 1977). That is not the case before this Court.

[3] Defendants also assert that the mediation that did occur was biased due to the previously entered injunction. Defendants cite no case law in support of this contention, nor any reason why the case should be dismissed based on the allegation.

4

## II.    Defendants' Motion to Vacate

Defendants Motion to Vacate the two orders previously entered in this case were dependent upon a finding that the Court lacked jurisdiction to render the orders. However, because we have determined that the Court did have jurisdiction over the subject matter, all prior orders in this matter stand.

## III.    Plaintiffs' Motion for Summary Judgment

Plaintiffs move for summary judgment asserting that they are entitled to judgment as a matter of law and issuance of a permanent injunction prohibiting Defendants from conducting any commercial activities within the Easement Parcel.

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. A genuine issue is raised "when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Parrish v. Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778, 781. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575.

Plaintiffs rely solely on the Preliminary Injunction Order entered by the Court in June, 2007 temporarily prohibiting any commercial use of the Easement Parcel. They specifically rely on the Preliminary Injunction Order's determination that the Conservation Easement language is unambiguous with respect to its intent to restrict recreational use of the Easement Parcel to "residential recreational use" only.[4] Defendants assert that the Preliminary

---

[4] The Order states in pertinent part:

Injunction Order is not a final judgment and thus the Court is free to revisit the issues.

The Court agrees with Defendants that the preliminary injunction is not a final order of this Court. However, after a full testimonial hearing, a preliminary injunction was entered based both on questions of law and fact. To the degree that the facts have been clarified at this later stage in the process, the Court will consider the preliminary injunction court's application of the law to the facts. Short of a significant error on the part of the injunction court, however, this Court will not disturb any determinations of law as they have become the law of the case.[5]

---

> Based on the foregoing, the court concludes that the unambiguous language of the easement deed is intended to restrict permitted residential recreational activities on the Easement Parcel to the fee owners of the Farm Property and to their guests, and the court further concludes that the easement deed prohibits any collateral use of the Easement Parcel, recreation or otherwise by patrons or attendees of permitted commercial activities on the Front Parcel.

Preliminary Injunction Order at 8.

[5] The Law Court has articulated the "law of the case" doctrine as follows:

> The doctrine of the "law of the case" rests on the sound policy that in the interest of finality and intra court comity a Superior Court justice should not, in subsequent proceedings involving the same case, overrule or reconsider the decision of another justice. *Blance v. Alley*, 404 A.2d 587, 589 (Me. 1979); *Warren v. Waterville Urban Renewal Auth.*, 259 A.2d 364, 367 (Me. 1969). Such a rule of practice promotes the orderly conduct of an action and discourages judge shopping. *Blance*, 404 A.2d at 589. While based on important policy considerations, the law of the case is not as rigidly applied as the doctrine of res judicata. *Id.* The rule does not serve as a complete bar to reconsideration of an issue when the prior ruling is provisional or lacks clarity, or the error is of such character that it should be corrected at trial. 1B *Moore's Federal Practice* ¶ 0.404 [4], at 454-55 (1980).

*Grant v. City of Saco*, 436 A.2d 403, 405 (Me. 1981).

6

With respect to the facts proffered at summary judgment, Defendants ask the court to consider understandings the Defendants may have had regarding the scope of the Conservation Easement based on statements made by certain individuals at the time Defendants purchased the property and when they were creating their business plans. Defendants also ask the Court to consider the impact of their proposed uses on the Easement Parcel. Defendants do not dispute that they intend to offer to the public hay rides, sleigh rides, Nordic skiing, snowshoeing, and hiking on the logging roads and skating on the pond within the Easement Parcel.

This Court does not find that Defendants' additional statements of material fact have the potential to effect the outcome of the suit. The question before the Court at summary judgment is the scope of the Conservation Easement. In the Preliminary Injunction Order, the court found, as a matter of law, that the Conservation Easement did not permit commercial uses within the Easement Parcel. This determination was not provisional, does not lack clarity nor does the Court find error with it. Accordingly, the Court will not disturb the prior determination of law made in this case.

Defendants do not deny that they intend to make commercial use of the Easement Parcel. Thus, summary judgment in favor of Plaintiffs is appropriate to clarify the scope of the Easement Parcel.

**Therefore, the entry is:**

Defendant's Motion to Dismiss is DENIED.

Defendant's Motion to Vacate Orders is DENIED.

Plaintiffs' Motion for Summary Judgment is GRANTED. The easement deed is intended to restrict permitted residential recreational activities on the Easement Parcel to the fee owners of the Farm Property and to their guests, and the thus Defendants are permanently enjoined from any collateral use of the Easement Parcel, recreation or otherwise by patrons or attendees of permitted commercial activities on the Front Parcel.

The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated at Portland, Maine this ___ day of ___ 2008.

Roland A. Cole
Justice, Superior Court

8

LINDA CONTI AAG
6 STATE HOUSE STATION
AUGUSTA ME 04333

*tate of Maine*

MARCIA CORRADINI ESQ
PO BOX 4510
PORTLAND ME 04112

*plaintiff*

CHRISTOPHER NEAGLE ESQ
PO BOX 9711
PORTLAND ME 04104-5011

*Defendants*